CONCERNED TAXPAYERS OF
BRUNSWICK COUNTY, ET AL.

V.

COUNTY OF BRUNSWICK, ET AL.

Record No. 940494

March 3, 1995

Present: Carrico, C.J., Compton, Stephenson, Whiting, Lacy, and Keenan, JJ.,
and Poff, Senior Justice

*Brian L. Buniva (Timothy M. Kaine; James R. Kibler, Jr.; Mezzullo & McCandlish*, on briefs), for appellants.

*Timothy G. Hayes (Heidi W. Abbott; Williams, Mullen, Christian & Dobbins,* on brief), for appellee AEGIS Waste Solutions, Inc.

*Robert M. Rolfe (Anne Gordon Greever; R. Noel Clinard; Lori M. Elliott; James E. Cornwell; Hunton & Williams,* on brief), for appellee Brunswick County.

*Allan M. Heyward, Jr. (Sands, Anderson, Marks & Miller,* on brief), for appellees J. Howard Settle; Leroy Lynch and James F. Pritchett.

JUSTICE KEENAN delivered the opinion of the Court.

In this appeal, we decide whether the trial court properly sustained demurrers to two bills of complaint, which challenged certain actions of county officials in connection with the planned construction of a regional landfill. We consider each bill of complaint separately, and since both were dismissed on demurrer, we consider as true all the material facts alleged in the bills of complaint, all facts impliedly alleged, and all reasonable inferences that may be drawn from such facts. *Krantz v. Air Line Pilots Ass'n, Int'l,* 245 Va. 202, 204, 427 S.E.2d 326, 327 (1993).

### The Zoning Case

In December 1992, Brunswick County (the County) issued a Request for Proposals (RFP) for construction and operation of a private landfill in the County. After various companies responded to the RFP, the County Board of Supervisors (the Board) began negotiations with AEGIS Waste Solutions, Inc. (AEGIS). The negotiations concerned construction and operation of a landfill that would accept, among other things, hazardous and medical wastes, although such materials specifically were prohibited by the RFP.

In June and July 1993, AEGIS purported to enter into contracts to purchase several tracts of land for use as the landfill site. Thereafter, AEGIS applied to the County for a conditional use permit (CUP) for the operation of a sanitary landfill that would accept various types of wastes and conduct recycling operations. After a public hearing on August 10, 1993, the County's Planning Commission voted to disapprove the CUP application, finding that the proposed landfill was not in accord with the County's comprehensive plan. In addition, the Planning Commission cited several other reasons for disapproving the CUP application, in-

cluding environmental concerns, possible flooding of the site, and concerns regarding the proposed acceptance of medical and special wastes.

The Board later held a public hearing on AEGIS' request for the CUP. At first, the Board members voted to deny the application. They then tabled the matter for further consideration at their next meeting although, in doing so, they failed to follow the Board's rules of procedure.

On September 15, 1993, by a 3 to 2 vote, the Board voted to grant AEGIS' application. This vote took place after the Board had delegated to special counsel the authority to draft conditions to be imposed on the CUP, but before the Board had reviewed those conditions.

On October 15, 1993, a bill of complaint for declaratory and injunctive relief was filed against the County, the Board, AEGIS, and several County employees in their official capacities. Plaintiffs were Concerned Taxpayers of Brunswick County, an association of local property owners and taxpayers, and several individual property owners (collectively, Concerned Taxpayers).

The trial court sustained demurrers to each of the five counts of the bill of complaint on the grounds that the Board's actions were entitled to a strong presumption of validity, and that the facts alleged were insufficient to show that the Board engaged in arbitrary and capricious conduct in granting the CUP. Concerned Taxpayers contend that, in ruling on the demurrers, the trial court erroneously applied a presumption that the zoning action was reasonable, without allowing them to present evidence to show that the action was unreasonable.

■ Initially, we note that Concerned Taxpayers have failed to advance any reasons why the trial court erred in sustaining demurrers to allegations of the bill of complaint contained in Count IV and in portions of Count II. Thus, we hold that the following issues have been abandoned: (1) whether the Board's initial vote to deny the CUP became final as a result of its failure to table the matter properly for reconsideration; and (2) whether the Board unlawfully delegated its legislative powers, and otherwise acted arbitrarily and capriciously, in authorizing its special counsel to prepare conditions governing issuance of the CUP. *See* Rule 5:27; *J. v. Victory Tabernacle Baptist Church*, 236 Va. 206, 208, 372 S.E.2d 391, 392-93 (1988); *Chesapeake & Potomac Tel. Co. of*

*Va. v. Sisson & Ryan, Inc.,* 234 Va. 492, 507, 362 S.E.2d 723, 731 (1987).

In Count I of their bill of complaint, Concerned Taxpayers allege that AEGIS' application for the CUP was deficient. They state that, since AEGIS did not have an enforceable contract to purchase a parcel of land intended to become a part of the landfill site, AEGIS did not have a sufficient legal interest in the land to apply for the CUP. Therefore, Concerned Taxpayers allege, any actions taken on the CUP application by the Planning Commission or the Board were void.

Attached to the bill of complaint was a copy of a "Contract for Purchase of Unimproved Property," signed by AEGIS as purchaser and members of a family named Bassette as sellers. This document contained the following provision: "DEFAULT: If either Seller or Purchaser defaults under this Contract, this Contract becomes null and void." Based on this provision, Concerned Taxpayers allege that the purported contract of purchase "is a legal nullity, lacking in mutuality, and is otherwise not enforceable as a matter of law."

The Board had power to issue the CUP only in the manner required by law. In Section 11-3-1 of its zoning ordinance, the County requires that an applicant for a conditional use permit "shall be an owner of record or contract purchaser with written approval of owner, of the land involved."

In Count I and the attached exhibit, Concerned Taxpayers state that AEGIS was neither owner of record nor a contract purchaser of the Bassette parcel, since its contract with the Bassettes was unenforceable, so that AEGIS did not meet the prerequisite for submission of an application as required by the zoning ordinance. We conclude that these allegations are sufficient to state a cause of action for noncompliance with the County's zoning ordinance and, thus, that the trial court erred in dismissing Count I of the bill of complaint.

In Count II, Concerned Taxpayers allege that the Board failed to comply with the County's zoning ordinance and with Code §§ 15.1-446.1 and 15.1-456.[1] They state that, since the proposed

---

[1] Code § 15.1-446.1 provides, in part, that the comprehensive plan shall show "the location of existing or proposed recycling centers." Code § 15.1-456 provides, in material part:

A. Whenever the local commission shall have recommended a comprehensive plan or part thereof for the county or municipality and such plan shall have been approved and adopted by the governing body, it shall control the general or approxi-

landfill and its recycling center were not shown on the County's comprehensive plan, the Board could not overrule the action of the Planning Commission and authorize the CUP unless the Board made specific written findings regarding the proposed CUP's accord with the comprehensive plan, pursuant to Code § 15.1-456 and Section 11-3 of the zoning ordinance. Concerned Taxpayers allege that the Board did not make these required written findings, and that the Board lacked jurisdiction to consider the CUP, because AEGIS failed to appeal the Planning Commission's decision to the Board.

We conclude that the trial court correctly sustained demurrers to the allegations of Count II. "[W]hile a demurrer admits as true all averments of material facts which are sufficiently pleaded, it does not admit the correctness of the conclusions of law stated by the pleader." *Arlington Yellow Cab Co. v. Transportation, Inc.*, 207 Va. 313, 318-19, 149 S.E.2d 877, 881 (1966). The trial court properly held that the facts pleaded, if true, did not support a conclusion of law that the Board acted arbitrarily, unreasonably, or unlawfully.

Code § 15.1-456(B) permits a governing body to overrule the action of the local commission. That section does not limit the governing body's authority to overrule the action of the local commission to instances when an appeal is filed by the owners or their

mate location, character and extent of each feature shown on the plan. Thereafter, unless such feature is already shown on the adopted master plan or part thereof or is deemed so under subsection D, no street or connection to an existing street, park or other public area, public building or public structure, public utility facility or public service corporation facility other than railroad facility, whether publicly or privately owned, shall be constructed, established or authorized, unless and until the general location or approximate location, character, and extent thereof has been submitted to and approved by the local commission as being substantially in accord with the adopted comprehensive plan or part thereof. In connection with any such determination the commission may, and at the direction of the governing body shall, hold a public hearing, after notice as required by § 15.1-431.

B. The commission shall communicate its findings to the governing body, indicating its approval or disapproval with written reasons therefor. The governing body may overrule the action of the commission by a vote of a majority of the membership thereof. Failure of the commission to act within sixty days of such submission, unless such time shall be extended by the governing body, shall be deemed approval. The owner or owners or their agents may appeal the decision of the local commission to the governing body within ten days after the decision of the commission. The appeal shall be by written petition to the governing body setting forth the reasons for the appeal. The appeal shall be heard and determined within sixty days from its filing. A majority vote of the governing body shall overrule the commission.

agents. Rather, the governing body may overrule the commission on its own motion by a majority vote. In addition, neither Section 11-3 of the zoning ordinance nor Code § 15.1-456 requires the governing body to make specific written findings when it grants a CUP for a use that is not shown on the comprehensive plan. Thus, the Board's actions, as recited in Count II, do not constitute a violation of Code § 15.1-456 or the zoning ordinance.

In Count III, Concerned Taxpayers allege that the Board's action in granting the CUP was arbitrary, capricious, and unreasonable, because the Board acted with disregard of the environmental consequences of the landfill, despite the requirements in Code §§ 15.1-489 and 15.1-490 and in the comprehensive plan that zoning actions protect the environment and conserve natural resources. Concerned Taxpayers allege that the landfill will be located near the existing, County-owned landfill, and that groundwater has been contaminated by the County's landfill. They further allege that AEGIS did not conduct geotechnical studies to support the location of the proposed landfill.

In sustaining the demurrer to Count III, the trial court referred only to the strong presumption of authority that is accorded to legislative action. Thus, the trial court effectively held that the County's zoning action is not subject to judicial review. We conclude that the trial court erred in reaching this result.

It is well established that a local governing body's decision to grant or to deny a conditional use permit is a legislative action. Such action is presumed to be reasonable, and the burden rests on the party attacking it to establish that it is unreasonable. *County Bd. v. Bratic*, 237 Va. 221, 226-27, 377 S.E.2d 368, 370-71 (1989).

> If the presumptive reasonableness of zoning action is challenged by probative evidence of unreasonableness, the challenge must be met by evidence of reasonableness. If such evidence of reasonableness is sufficient to make the issue fairly debatable, the legislative action must be sustained; if not, the presumption is defeated by the evidence of unreasonableness and the legislative act cannot be sustained.

*Id.* at 227, 377 S.E.2d at 371.

A demurrer does not permit the trial court to evaluate and decide the merits of the claim set forth in a bill of complaint

or a motion for judgment, but only tests the sufficiency of the factual allegations to determine whether the pleading states a cause of action. *Fun v. Virginia Military Inst.*, 245 Va. 249, 252, 427 S.E.2d 181, 183 (1993). In Count III, Concerned Taxpayers allege facts that, if true, would constitute probative evidence that the Board's action in granting the CUP was unreasonable. Therefore, Concerned Taxpayers are entitled to present such evidence to challenge the presumptive reasonableness of the legislative action. Until it has heard evidence in this case, the trial court cannot determine whether the Board's decision is "fairly debatable."

In Count V, Concerned Taxpayers allege that the proposed landfill site will impact wetlands, state waters, and other aquatic resources, and is otherwise not a suitable site for a landfill under the requirements of the Virginia Waste Management Act, Code §§ 10.1-1400 to -1457. Thus, they contend that the Board acted arbitrarily and capriciously in purporting to authorize a use that is contrary to law. We hold that the trial court correctly determined that these conclusions of law did not state a cause of action that the Board acted arbitrarily, unreasonably, or unlawfully in granting the CUP.

The Waste Management Act does not require a local governing body to determine whether a use is in compliance with the Act's provisions. Rather, that function is committed to the Director of the Department of Environmental Quality, who issues the permit required for the operation of a sanitary landfill or other like facility, after determining that the proposed facility poses no substantial danger to human health or the environment. Code §§ 10.1-1183, 10.1-1185, 10.1-1408.1(A), (D). In contrast, the function of the local governing body under the Waste Management Act is to certify that the location and operation of the facility are consistent with all applicable ordinances before the permit may be issued. Code § 10.1-1408.1(B)(1).[2]

For these reasons, we conclude that Concerned Taxpayers are entitled to consideration of the merits of Counts I and III of their

---

[2] Based on our decision to remand Counts I and III to the trial court, we do not reach the issue whether the court properly denied Concerned Taxpayers' request to enjoin the defendants from certifying to the Department of Environmental Quality that the proposed landfill will comply with all applicable ordinances.

bill of complaint, but that the trial court properly sustained demurrers to Counts II, IV, and V.[3]

## The Public Procurement Act Case

After the County had awarded a contract to AEGIS to construct and operate the proposed landfill, Concerned Taxpayers filed a second bill of complaint. In this pleading, they allege that the County's contract with AEGIS is void, because the County did not comply with the requirements of the Virginia Public Procurement Act, Code §§ 11-35 to -80 (the Procurement Act).

Specifically, Concerned Taxpayers allege that the County and the Board negotiated and contracted with AEGIS although AEGIS' proposal was not responsive to the RFP; that the Board failed to negotiate with two or more offerors, or to find in writing that AEGIS was the only fully qualified offeror; that the Board failed to conduct competitive sealed bidding in order to procure construction; that the contract violated the Procurement Act's prohibition against design-build contracts; and that the contract allowed AEGIS to engage in waste treatment and disposal practices that specifically were prohibited by the RFP.

In addition, Concerned Taxpayers named as defendants, in their individual capacities, three members of the Board (the Individual Supervisors) who acted as the so-called "majority faction" in granting the CUP and in negotiating with and awarding the contract to AEGIS. Concerned Taxpayers allege that, in doing so, the Individual Supervisors acted illegally and authorized "unlawful expenditures of taxpayer-generated County funds." Concerned Taxpayers asked the trial court to order the Individual Supervisors to "make restitution personally, jointly and severally for all such unlawful expenditures of public funds as they have authorized in pursuit of the illegal negotiations and award of this illegal contract."

---

[3] Concerned Taxpayers also have argued that the trial court erred in taking judicial notice of several exhibits attached to the demurrer filed by the Board and other County defendants. The defendants' pleading asserted that the exhibits in question, which included the Board's minutes, supported their grounds for demurrer to the allegations that the Board had illegally delegated its authority and had failed to vote in accordance with its rules of procedure. We find that we need not reach this assignment of error, because we affirm the trial court's action sustaining demurrers to those allegations for reasons unrelated to the content of the Board's minutes.

The trial court sustained the defendants' demurrers and dismissed the bill of complaint. In addition, the trial court granted the Individual Supervisors' request for sanctions against Concerned Taxpayers and their attorneys, pursuant to Code § 8.01-271.1.

Concerned Taxpayers contend that the trial court erred in ruling that they lack standing to bring suit for enforcement of the provisions of the Procurement Act. They argue that the Procurement Act does not expressly preclude such a challenge. In addition, Concerned Taxpayers maintain that they have a common law right of action as taxpayers to petition for restraint of a local government's unlawful and unauthorized expenditure of public funds. We disagree and hold that the trial court correctly ruled that the Concerned Taxpayers do not have standing under either the Procurement Act or the common law.

" '[When] a statute creates a right and provides a remedy for the vindication of that right, then that remedy is exclusive unless the statute says otherwise.' " *Vansant & Gusler, Inc. v. Washington*, 245 Va. 356, 360, 429 S.E.2d 31, 33 (1993) (quoting *School Bd. v. Giannoutsos*, 238 Va. 144, 147, 380 S.E.2d 647, 649 (1989)). The Procurement Act "confers certain rights and obligations upon citizens of the Commonwealth, nongovernmental contractors, and governmental entities." *W.M. Schlosser Co. v. Board of Supervisors*, 245 Va. 451, 456, 428 S.E.2d 919, 922 (1993). These rights and obligations did not exist in the common law and were created through the statutory scheme of the Procurement Act.

The Procurement Act also provides remedies for individuals or entities who have been denied rights conferred by the Act. Remedies for the violations alleged by Concerned Taxpayers are contained in Code §§ 11-63 through -70. These sections permit only bidders, offerors, and contractors, within the meaning of the Act, to invoke those remedies by protesting an award, initiating administrative procedures, or bringing an action to challenge a decision to award a contract. The Procurement Act does not provide a right of action to those not involved in the bidding and procurement process. Since Concerned Taxpayers are not among those afforded remedies under Code §§ 11-63 through -70, they do not have standing to challenge the Board's alleged violations of the Procurement Act.

Nevertheless, Concerned Taxpayers contend that they have a common law right as taxpayers to bring suit to restrain the Board from exceeding its powers in a way that will injuriously affect taxpayers. Citing *Gordon v. Board of Supervisors*, 207 Va. 827, 830, 153 S.E.2d 270, 273 (1967), and *Roper v. McWhorter*, 77 Va. 214, 217 (1883), Concerned Taxpayers argue that taxpayer standing exists when officials have purported to exercise powers beyond those the legislature has conferred expressly or by necessary implication. *Gordon*, 207 Va. at 832, 153 S.E.2d at 274. They contend that the Board exceeded its powers because it legally could not contract for the services at issue without following the procedures mandated by the Procurement Act.

 The bill of complaint, however, does not allege acts by any of the defendants that exceed their powers. Local governing bodies are expressly authorized to enter into contracts relating to waste disposal facilities. Code §§ 15.1-28.01 and 15.1-28.02; *see also Concerned Residents of Gloucester County v. Board of Supervisors*, 248 Va. 488, 498-99, 449 S.E.2d 787, 793 (1994). Further, a violation of the Procurement Act does not render void the contract between the governing body and contractor.

Instead, the Procurement Act provides that if an award of a contract is found to have been arbitrary or capricious, "the performance of the contract *may* be enjoined" or "the public body *may* declare the contract void upon a finding that this action is in the best interest of the public." Code § 11-66(B) (emphasis added). Therefore, we conclude that *Gordon* and *Roper* are not applicable and that there is no common law right of action here because, even if the defendants had violated any provision of the Act, as alleged, such violation would not void their authority under the Act to award a contract.

Concerned Taxpayers next contend that the trial court erroneously awarded sanctions based on the claims they asserted against the Individual Supervisors. First, they assert that the trial court already had lost jurisdiction in the case when it entered the sanctions order. Alternatively, they argue that the trial court abused its discretion in awarding sanctions.

The record shows that, in its order of January 3, 1994, dismissing the bill of complaint, the trial court stated that it would reconsider the Concerned Taxpayers' request to file an amended bill of complaint. In that order, the trial court also granted the Individual Supervisors leave to file "additional submissions and a

Notice of Hearing upon their Motion for Sanctions within twenty-one (21) days after entry of this Order." The Individual Supervisors filed their additional submissions, but not their notice of hearing, within the time specified.

By order dated February 10, 1994, the trial court denied Concerned Taxpayers' motion for leave to amend their bill, and stated that it would "retain jurisdiction" over the Individual Supervisors' request for sanctions. On March 31, 1994, after a hearing, the trial court entered its last order in the case, in which it granted the Individual Supervisors' motion for sanctions and entered judgment against Concerned Taxpayers and their attorneys, jointly and severally, for legal expenses incurred in defending the claim.

Concerned Taxpayers contend that the order of January 3, 1994, became a final order when the Individual Supervisors failed to comply with the trial court's direction to file their notice of hearing within 21 days after entry of the order. Citing *Bibber v. McCreary*, 194 Va. 394, 73 S.E.2d 382 (1952), they argue that if a litigant fails to comply with the terms of an order within the time specified, the litigant is barred from further prosecution of the cause. Based on this authority, they assert that the order of January 3, 1994, remained under the control of the trial court for only 21 days after the date of its entry. Rule 1:1; *see also Smith v. Stanaway*, 242 Va. 286, 289, 410 S.E.2d 610, 612 (1991). Thus, they conclude, the trial court did not have jurisdiction when it purported to enter the March 31, 1994 order. We disagree.

Concerned Taxpayers' argument misconstrues *Bibber*, which states that further prosecution of an action is barred by a party's failure to amend his motion for judgment, after the trial court has sustained a demurrer, dismissed the case, and granted leave to amend. 194 Va. at 397, 73 S.E.2d at 384. *Bibber* is inapposite to the present case, because there is no issue presented here of failure to amend a pleading, and timely filing of the Notice of Hearing was not a jurisdictional requirement for further proceedings on the sanctions motion.

Moreover, the material facts in this case are unlike those in *Smith*, because the order of dismissal in that case did not reserve any issues for further consideration. *Smith*, 242 Va. at 288-89, 410 S.E.2d at 611-12. Here, however, the trial court expressly reserved jurisdiction over the Individual Supervisors' motion for sanctions in the two orders that preceded the final order entered

March 31, 1994. Therefore, neither Rule 1:1 nor *Smith* precludes our consideration of the sanctions issue here.

Turning to the merits of this issue, we consider Concerned Taxpayers' contention that the trial court abused its discretion in awarding sanctions. The trial court held, in accordance with Code § 8.01-271.1, that sanctions were appropriate because the allegations made against the Individual Supervisors were not warranted either by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

Concerned Taxpayers contend that they reasonably sought an accounting and restitution against the Individual Supervisors in their individual capacities. Concerned Taxpayers argue that an official who has made unauthorized appropriations of funds is not clothed with immunity. Further, citing *Burk v. Porter*, 222 Va. 795, 798, 284 S.E.2d 602, 604 (1981), and *Johnson v. Black*, 103 Va. 477, 484, 49 S.E. 633, 635 (1905), they contend that public officials may be compelled to restore public funds that have been illegally diverted. We conclude that Concerned Taxpayers' argument has no merit under the facts presented here.

Code § 15.1-7.01 provides that members of the governing bodies of local governmental entities "shall be immune from suit arising from the exercise or failure to exercise their discretionary or governmental authority as members of the governing body . . . which does not involve the unauthorized appropriation or misappropriation of funds." Concerned Taxpayers could not reasonably have believed that the Individual Supervisors' expenditure of funds was an "unauthorized appropriation" within the meaning of Code § 15.1-7.01, since Code §§ 15.1-28.01 and 15.1-28.02 specifically authorized the Board to disburse public funds in order to procure waste management services. In entering into negotiations with AEGIS and in deciding to procure services from AEGIS, the Individual Supervisors were acting within the realm of their legislative function, and are not subject to personal liability based on their decisions made on behalf of the County.

Further, the Procurement Act provides no remedy of restitution in cases where monies have been spent on contracts which are later declared to have been awarded improperly. To the contrary, the Procurement Act specifically provides that in such an instance "the performing contractor shall be compensated for the cost of performance up to the time of such declaration." Code § 11-66(B).

■ Concerned Taxpayers' reliance on *Burk* and *Johnson* also is misplaced, since those cases, unlike the present appeal, involved allegations that county board members illegally had diverted funds to their own personal benefit. Thus, *Burk* and *Johnson* provide no authority for Concerned Taxpayers' request for an order of restitution based on their allegations here, which do not involve illegal diversion of funds. Thus, we hold that the trial court did not abuse its discretion in concluding that the allegations against the Individual Supervisors were not warranted either by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

In summary, we will affirm the trial court's judgment in the Public Procurement Act Case. In the Zoning Case, we will affirm that portion of the trial court's judgment dismissing Counts II, IV, and V of the bill of complaint, and we will reverse that portion of the trial court's judgment dismissing Counts I and III and remand the case for further proceedings consistent with the principles stated in this opinion.

*Affirmed in part,*
*reversed in part,*
*and remanded.*