Present: All the Justices

HOLLY'S, INC.                                    OPINION BY

v.  Record No. 941572                CHIEF JUSTICE HARRY L. CARRICO
                                            June 9, 1995
COUNTY OF GREENSVILLE

                FROM THE CIRCUIT COURT OF GREENSVILLE COUNTY
                        Robert G. O'Hara, Jr., Judge


        This litigation commenced with the filing of a bill of
complaint by Holly's, Inc. (Holly's) against the County of
Greensville (the County).  The dispute involves certain provisions
of the Virginia Public Procurement Act, Code §§ 11-35 through -80
(the Act).  Section 11-42(B) provides that "[a] public body may
waive informalities in bids," and the primary question on appeal
is whether this provision permits a public body to waive a
requirement concerning the timeliness of bids.

        The facts germane to the issues in the case were stipulated
by the parties.  As pertinent here, the stipulated facts reveal
the following situation:

        5.  The bid invitation stated in part as follows:

        "On Thursday, March 17, 1994, at 2:00 p.m. all
        bids received for provision of residential
        solid waste collection in Greensville County
        will be opened."

        . . . .

        8.  On March 17, 1994, Holly's submitted its bid at
        1:34 p.m. and had the same stamped and time-dated by the
        County . . . .  [Browning-Ferris Industries of S.
        Atlantic, Inc. (BFI)] had also submitted its sealed bid
        to a County official prior to 2:00 p.m. that day.

        9.  At 1:50 p.m. a representative from [ARS-Waste
        Management, Ltd. (ARS)] was present in the room where
        the bid opening was to be conducted and had with him the
        sealed bid of ARS.

        10.  Mr. Fred Maldonado, the County employee in

charge of the bid opening process, was not in the designated room at the time the ARS representative arrived, and did not arrive in the designated room until either 2:02 p.m. or 2:03 p.m.

11. Between 1:50 p.m. and Mr. Maldonado's arrival in the designated bid-opening room . . ., the representative of Holly's, the representative of BFI, the representative of ARS and the bid of ARS were continually present together in the designated bid-opening room, and throughout that time Mr. Maldonado was apart from them and continually had in his possession the sealed bids of both BFI and Holly's.

12. When Mr. Maldonado entered the designated bid-opening room, the bid of ARS was either lying upon the table to be utilized by Mr. Maldonado (which is the recollection of the ARS representative and of Mr. Maldonado), or instead the ARS representative handed its bid to Mr. Maldonado (which is the recollection of the representative of Holly's and the representative of BFI).

13. Upon opening the bids ARS was the apparent low bidder . . ., and Holly's was the next lowest bidder . . .

 . . . .

15. A regularly scheduled meeting of the Greensville County Board of Supervisors was scheduled for Monday, March 21, 1994, beginning at 7:30 p.m., and an agenda item for that evening was the review of all bids received on March 17 and an award of the contract.

16. Prior to 5:00 p.m. on March 21, [the attorney for Holly's] communicated Holly's protest of the bid of ARS in two separate letters which were sent that day by telefax, one to Mr. Maldonado and the other to the County Attorney.

17. At their meeting Monday evening, March 21, the County accepted the bid of ARS and awarded the contract to it.

18. As requested by [the attorney for Holly's], the County Attorney left the Supervisors' meeting as soon as that action was taken by the Board of Supervisors . . . and called [the attorney for Holly's] at his home to advise that the Board had given consideration to the matters raised in his two letters sent by telefax earlier that day, and thereafter taken action awarding the contract to ARS.

19. On March 23, 1994, the County's authorized and designated representative afforded Holly's written notice of County's decision to award the contract to the low bidder, ARS.

On May 13, 1994, Holly's filed its bill of complaint alleging that the County's award of the contract to ARS did not constitute an honest exercise of discretion but was arbitrary and capricious and not in accordance with the Act, the County purchasing procedures, or the terms and conditions of the invitation to bid. Holly's sought a permanent injunction against award of the contract to ARS and also sought the entry of an order declaring Holly's the low bidder.

After a hearing, the trial court held that the acceptance of the ARS bid constituted a proper exercise of the County's "right to waive informalities in the sealed bid process, which right is afforded to County by Virginia Code Section 11-42." Consequently, the court denied the prayer of Holly's for a permanent injunction and ordered the matter stricken from the docket.

We first consider an argument made by the County that "Holly's claim is barred by its failure to institute this action within the time limits imposed by Virginia Code Section 11-66.A. and by the doctrines of laches and equitable estoppel."[*] However, in its final decree, the trial court ruled that Holly's was not "barred from prosecuting its interests in this matter, whether by

---

[*]As pertinent here, Code § 11-66(A) provides that a bidder desiring to protest the award of a contract shall submit such protest in writing no later than ten days after the award, that the public body or designated official shall issue a decision in writing within ten days, stating the reason for the action taken, and that the decision shall be final unless the protesting bidder institutes legal action within ten days of the written decision.

operation of Virginia Code Section 11-66, . . . by the doctrine of equitable estoppel, by the doctrine of laches, or by any other statute or doctrine," and, as Holly's points out, the County did not object to this ruling; indeed, the decree is endorsed by counsel for the County in these words: "I ask for this decree." Accordingly, we will not consider the County's argument. Rule 5:25.

This brings us to the primary issue in the case, viz., the timeliness of the ARS bid. The County devotes a considerable portion of its brief to a contention that the bid of ARS was "submitted" prior to 2:00 p.m. on March 17, 1994, and that this submission satisfied the requirements of the invitation to bid. A distinction must be made, the County maintains, between the word "submit" and the word "receive." Quoting a dictionary definition, the County says that the word "submit" means "to commit (something) to the consideration of another" while the word "receive" means "to take or acquire (something given, offered or transmitted)."

The County then argues it is undisputed that a representative of ARS was in the bid-opening room at 1:50 p.m., that he had with him the bid of ARS, that from the time he arrived until the arrival of Mr. Maldonado at 2:02 or 2:03 p.m., the representative of Holly's, the representative of BFI, the representative of ARS, and the bid of ARS were together in the room, and that when Mr. Maldonado entered the room, the bid was either lying on a table in that room or forthwith handed to Mr. Maldonado. Accordingly, says the County, "the bid of ARS was in the place where it was required

to be before the time when it was required to be there," and the only reason the bid was not received prior to 2:00 p.m., as opposed to being submitted prior to 2:00 p.m., was Mr. Maldonado's failure to be in the designated place at the designated time. In short, the County asserts, "the bid of ARS was <u>submitted</u> both properly and timely."

The County opines that had the General Assembly shared the enthusiasm of Holly's for form over substance, it would have provided in the Act "that no bids <u>received</u> (as opposed to submitted) after the designated bid-opening hour would be considered." The County points out that the General Assembly declined to impose such a rigid and inflexible standard, and the County requests that this Court "likewise adopt a policy of substance over form."

We decline the request. To refuse to adopt the County's views on this subject would not involve elevating form over substance but rather would involve merely giving a word its plain and ordinary meaning. The invitation to bid in this case stated that on the given date all bids "received" for provision of solid waste collection would be opened at 2:00 p.m. Under this language, a bid could not be opened <u>at</u> 2:00 p.m. unless it was received <u>before</u> 2:00 p.m. Hence, it was not sufficient merely to submit a bid to the County prior to the appointed hour; in addition, the bid must have been received by the County before that time. And the risk that some untoward event might occur to prevent the bid's timely receipt must fall upon ARS, whose representative waited until almost the last minute to submit its

bid.

Remaining is the question whether the County could waive the 2:00 p.m. filing requirement. The answer to this question turns on whether the requirement is an informality that may be waived under Code § 11-42(B).

The County argues that the requirement does constitute an informality that may be waived. The County points out that § 11-37 defines an informality as "a minor defect or variation of a bid . . . from the exact requirements of the Invitation to Bid . . . which does not affect the price, quality, quantity or delivery schedule for the . . . services . . . being procured," and the County cites three out-of-state decisions as authority for the proposition that "a bid tendered late by a bidder may be accepted": Townsend v. McCall, 80 So. 2d 262, 266 (Ala. 1955); Nielsen v. City of St. Paul, 88 N.W.2d 853, 859 (Minn. 1958); Gostovich v. City of West Richland, 452 P.2d 737, 740 (Wash. 1969). Our research has disclosed two other decisions holding to the same effect: Hewitt Contracting Co. v. Melbourne Regional Airport Auth., 528 So. 2d 122, 122 (Fla. Dist. Ct. App. 1988); William M. Young & Co. v. West Orange Redev. Agency, 311 A.2d 390, 392 (N.J. Super. App. Div. 1973).

Holly's also cites a number of out-of-state decisions but they do not address the question whether a time requirement for filing bids may be waived. However, our research discloses four decisions supporting the view that such a time requirement may not be waived. City of Atlanta v. J.A. Jones Constr. Co., 392 S.E.2d 564, 569 (Ga. Ct. App.), rev'd on other grounds, 398 S.E.2d 369

(Ga. 1990), cert. denied, 500 U.S. 928 (1991); Hawaii Corp. v. Kim, 500 P.2d 1165, 1169 (Haw. 1972); Rexton, Inc. v. State, 521 N.W.2d 51, 53-54 (Minn. Ct. App. 1994) (distinguishing Nielsen v. City of St. Paul, supra); Wiltom Coach Co. v. Central High School, 232 N.Y.S.2d 876, 877 (N.Y. Sup. Ct. 1962).

Hence, five out-of-state decisions support waiver and four support non-waiver. We think the non-waiver decisions express the better view for it fosters the establishment of a bright-line rule for determining whether a bid is timely. As we said in Newport News v. Doyle & Russell, Inc., 211 Va. 603, 179 S.E.2d 493 (1971), where we enforced a provision in a bid form prohibiting a plea of mistake:

> To hold otherwise would . . . seriously jeopardize the sanctity of the system for bidding on public contracts and lead to the uncertainty and unreliability of bids. The system followed here for awarding such contracts saves the public harmless, as well as the bidders themselves, from favoritism or fraud in its varied forms.

Id. at 608, 179 S.E.2d at 497.

In our opinion, a requirement in an invitation to bid that fixes the time within which bids must be received is not a minor defect or an informality that may be waived but, rather, a material and formal requirement that, under the circumstances present here, must be fulfilled to the letter of the law. Accordingly, we hold that the trial court erred in ruling that ARS's late filing of its bid could be waived. By way of remedy, Code § 11-70(C) provides that the award of a contract "shall be reversed only if the [challenger] establishes that the . . . award is not an honest exercise of discretion, but rather is . . . not

in accordance with the . . . terms and conditions of the Invitation to Bid."  Here, the award was not in accordance with the terms and conditions of the invitation to bid and, accordingly, Holly's is entitled to the relief it seeks, viz., the reversal of the judgment of the trial court, a declaration that the contract between the County and ARS is void as a matter of law, and a remand of the matter to the trial court for consideration of the prayer of Holly's for injunctive relief.

Reversed and remanded.

JUSTICE STEPHENSON, with whom JUSTICE WHITING joins, dissenting.

I would hold that ARS's bid was "received" timely.  According to the stipulated facts, "[a]t 1:50 p.m. a representative from ARS was present in the room where the bid opening was to be conducted and had with him the sealed bid of ARS."  However, "the County employee in charge of the bid opening process . . . was not in the designated room at the time the ARS representative arrived, and did not arrive in the designated room until either 2:02 p.m. or 2:03 p.m."  Between 1:50 p.m. and the time the County employee arrived in the room, "the representative of ARS and the bid of ARS were continually present together in the designated bid-opening room."  When the County employee entered the designated bid-opening room, "the bid of ARS was either lying upon the table to be utilized by [the County employee] . . . or . . . the ARS representative handed its bid to [the County employee]."

Thus, ARS had its sealed bid in the designated bid-opening room ten minutes before the deadline.  I think that ARS's bid should not have been voided due to circumstances that were beyond

its control, <u>i.e.</u>, the tardiness of the County's employee.