164

# CIRCUIT COURT OF BOTETOURT COUNTY

Advanced Transportation
and Logistics, Inc.

v.

Botetourt County
and Botetourt County
Board of Supervisors

October 6, 2008

Case No. CL08-199

By Judge Malfourd W. Trumbo

This cause was filed March 26, 2008, by Advanced Transportation and Logistics, Inc., against Botetourt County and the Board of Supervisors of Botetourt County. The defendant filed a demurrer on April 17, 2008. On May 29, 2008, a hearing on the demurrer was held, at which time this Court sustained the demurrer and allowed the plaintiff twenty-one days from the date of entry of the order to amend the complaint.

On June 24, 2008, plaintiff filed an amended complaint. It was followed by a motion for a bill of particulars filed by the defendant on July 3, 2008, and a responding bill was filed on August 25, 2008. The defendant was permitted until July 22, 2008, to file responsive pleadings by order entered July 15, 2008. Another demurrer was filed by the defendant on July 21, 2008. Both plaintiff and defendant briefed the demurrer, and a hearing was held on August 29, 2008, on defendant's motion to quash the demurrer. A subsequent hearing was held on October 1, 2008, to clarify what documents might be filed in response to issues raised at the August 29, 2008, hearing.

The subject of this opinion is whether defendant's demurrer to plaintiff's amended complaint should be sustained. The defendants base their demurrer on two grounds: (a) the Virginia Public Procurement Act ("the VPPA") does not apply to waste hauler contracts entered into under the county's solid waste ordinance and (b) even if the VPPA applies, the plaintiff does not have standing to sue under its provisions. A demurrer admits the truth and tests the legal sufficiency of facts alleged in pleadings, but not the strength of proof. *Glazebrook v. Board of Supervisors*, 266 Va. 550, 554, 587 S.E.2d 589, 591 (2003).

A demurrer does not admit the correctness of the pleader's conclusions of law. *Taboada v. Daly Seven, Inc.*, 271 Va. 313, 317, 626 S.E.2d 428, 429 (2006); *Harris v. Kreutzer*, 271 Va. 188, 195, 624 S.E.2d 24, 28 (2006). To survive a challenge by demurrer, a "pleading must be made with 'sufficient definiteness to enable the Court to find the existence of a legal basis for judgment'." *Eagle Harbor, L.L.C. v. Isle of Wight County*, 271 Va. 603, 611, 628 S.E.2d 298, 302 (2006), quoting *Moore v. Jefferson Hosp., Inc.*, 208 Va. 438, 440, 158 S.E.2d 124, 126 (1967). The essential question posed by this demurrer is "whether the factual allegations of the [Amended Complaint] are sufficient to state a cause of action." *Harris, supra,* at 195-96, quoting *Riverview Farm v. Board of Supervisors*, 259 Va. 419, 427, 528 S.E.2d 99, 103 (2000).

*Facts*

The Board of Supervisors of Botetourt County, the governing body of Botetourt County, held meetings on February 26, 2008, and March 25, 2008. In these meetings, the Board decided to extend the contract terms of persons providing waste hauling services (the "Contractors") to the County without competitive procurement. These amended agreements that purport to extend the contract terms of the Contractors also added many new provisions, conditions, and requirements.

The Contractors had originally entered into waste hauling services contracts with the County in June 2002 pursuant to a competitive procurement process established by the County Code. These contracts were awarded for a term of seven years and were to expire in 2009. The amended agreements extended the terms of these contracts for an additional two and one-half years. The contracts are due to expire in 2012.

Advanced Transportation and Logistics, Inc. ("Advanced Logistics"), a Virginia corporation that operates in the County, is in the business of transporting and handling goods and materials, including solid waste. As the

Board did not solicit bids for the waste hauling services contracts, Advanced Logistics was never presented with the opportunity to compete for the waste hauling services contracts. Advanced Logistics maintains that, if it had been allowed to compete for the waste hauling services contracts, it could provide the services provided by the Contractors more effectively, efficiently, and at a lower price.

Advanced Logistics filed a Protest and Petition for Reconsideration on March 7, 2008. The Board denied both the Protest and the Petition for Reconsideration on March 25, 2008. Advanced Logistics then filed a lawsuit against the Board and the County. Advanced Logistics claims, among other things, that the Board's decision to extend the contract terms of the Contractors without competition violates the VPPA.

The County demurred to Advanced Logistics' amended complaint. The County argues that the VPPA does not apply under these circumstances in the area of solid waste collection and disposal. The County also maintains that Advanced Logistics lacks standing to bring a legal action against the County under the provisions of the VPPA.

*Analysis*

A. *The Virginia Public Procurement Act Regulates Service Contracts between Nongovernmental Parties and Local Governments*

The VPPA provides that "[a]ll public contracts with nongovernmental contractors for the . . . purchase of services . . . be awarded after competitive sealed bidding . . . unless otherwise authorized by law." Va. Code Ann. § 2.2-4303 (2008). As a result, the facts as pleaded indicate that the VPPA applies. The Amended Complaint asserts that "the Board purported to approve and authorize . . . [the execution of] . . . amended contract hauler agreements purporting to extend the contracts of the incumbent Contractors . . . without competition. . . ." (Amended Complaint at 10.) Further, the County does not receive revenue from the waste hauling services contracts because the Contractors charge their fees directly to the citizens of the County. (Brief in Support of Demurrer to Amended Complaint at 16.) As a result, the County argues that the waste hauling services contracts are small purchases and are therefore not controlled by competitive procedures. *Id.* This argument is unpersuasive. The VPPA applies "whether the consideration is monetary or nonmonetary and regardless of whether the public body, the contractor, or some third party is providing the consideration." Va. Code Ann. § 2.2-4300 (2008). Therefore, the fact that the consideration for the

waste hauling services contracts is paid by the citizens of the County rather than the County itself has no consequence on the application of the VPPA to the contracts.

Furthermore, the Supreme Court of Virginia has previously endorsed the application of the VPPA to waste hauling services contracts. In *Holly's, Inc. v. County of Greensville*, 250 Va. 12, 458 S.E.2d 454 (1995), the second lowest bidder for a waste collection services contract brought suit against a county, claiming that the award of the contract to the lowest bidder was void because the lowest bid had not been received in a timely manner. *Id.* at 15. The Virginia Supreme Court declared that the contract to the lowest bidder was void because "a requirement in an invitation to bid that fixes the time within which bids must be received is not a minor defect or an informality that may be waived but, rather, a material and formal requirement. . . ." *Id.* at 18. The Court further discussed the importance of the VPPA, stating that "[t]o hold otherwise would . . . seriously jeopardize the sanctity of the system for bidding on public contracts and lead to the uncertainty and unreliability of bids. The system followed here for awarding such contracts saves the public harmless, as well as the bidders themselves, from favoritism or fraud in its varied forms." *Id.* at 18 (citing *Newport News v. Doyle & Russell, Inc.*, 211 Va. 603, 608, 179 S.E.2d 493 (1971)). The Court did not consider the possibility that the VPPA did not apply to waste collection services contracts. *Id.* at 12-19. Instead, it strictly construed the provisions and requirements of the VPPA and applied them to the waste collection services contracts. *Id.* at 12-19. The Court had no reservations as to whether the VPPA applied to such contracts.

### 1. *The Virginia Public Procurement Act Includes a List of Exemptions That Does Not Include Waste Removal Services Contracts*

The VPPA, within its provisions, lists numerous exceptions to its application. Va. Code Ann. §§ 2.2-4343, 2.2-4344, 2.2-4345, 2.2-4346 (2008). These exceptions allow certain public bodies to enter into certain transactions without entering into competitive sealed bidding or competitive negotiation procedures. Va. Code Ann. §§ 2.2-4343, 2.2-4344, 2.2-4345, 2.2-4346 (2008). The list of exceptions is comprehensive and exclusive. Nothing in the language of the VPPA indicates that the list of exceptions is incomplete or merely representative. The General Assembly, aware of the enabling statutes embedded within the Virginia Code, exempted certain public contracts from the requirements of the VPPA, yet chose not to create an exception for

waste hauling services contracts. Thus, the legislature appears to have intended that the VPPA apply to such contracts. *Expressio unius est exclusio alterius*; the expression of one is the exclusion of others.

The Virginia Supreme Court has applied this very maxim of statutory construction to a portion of the VPPA. In *Blake Constr. Co., Inc./Poole & Kent v. Upper Occoquan Sewage Auth.* (the subject of later proceedings on other grounds), a public authority and a contractor were litigating multiple disputes concerning a construction contract. 266 Va. 564, 576, 587 S.E.2d 711 (2003). The Virginia Supreme Court, in the context of a contract under the VPPA, stated that the "construction of the statute is governed by the maxim *expressio unius est exclusio alterius*, which provides that the mention of a specific item in a statute implies that other omitted items were not intended to be included in the scope of the statute." *Id.* at 577 (citing *Smith Mountain Lake Yacht Club, Inc. v. Ramaker*, 261 Va. 240, 542 S.E.2d 392, 395 (2001)). The Court thus ruled that contract limitations on the contractor's right to damages for unreasonable delay were forbidden except to the extent enumerated by the General Assembly under the VPPA. This authority from the Virginia Supreme Court makes it safe to assume that the maxim applies to the scope of the enumerated list of exceptions within the VPPA.

2. *An Analysis of the Enabling Statutes Does Not Support the Preemption of the Virginia Public Procurement Act*

The County's Solid Waste Ordinance has effect pursuant to the enabling statutes of the Code of Virginia. Va. Code Ann. §§ 15.2-927, 15.2-928, 15.2-930, 15.2-931 (2008). The County argues that these statutes read collectively clearly indicate that the competitive purchasing requirements of the VPPA were not intended to generally apply to solid waste collection and disposal contracts. (Brief in Support of Demurrer to Amended Complaint at 9.) The enabling statutes, however, do not explicitly preempt application of the VPPA. The VPPA is mentioned in the enabling statutes in four places. "Obviously, the General Assembly would not have required the use of the VPPA in these narrow situations if the VPPA already applied across the board," the County argues. *Id.* at 11. Yet, each of these references has a contextual function that is independent of any implied preemptory function. The references to the VPPA in the enabling statutes serve to clarify language that would otherwise be ambiguous, rather than pinpoint particular situations that the VPPA should apply to.

The first reference to the VPPA in the enabling statutes provides that a locality, following a competitive process conducted in accordance with the VPPA, does not displace a private company by awarding the contract to a public service authority or by deciding to provide the services itself. Va. Code Ann. § 15.2-930 (2008). The locality in such a case does not need to follow additional procedures associated with displacing a nongovernmental contractor, even though it did not contract with the lowest bidder.

In such a situation, had the General Assembly not clarified what amounted to displacement of a private company and what did not, a competitive process conducted in accordance with the VPPA might have been understood to trigger the displacement status of the lowest bidder. Suppose a locality had entered into service contracts with nongovernmental entities and those service contracts were near the end of their term. At this point, a locality might simply allow the contracts to expire and then begin to provide the waste removal services itself. The first reference to the VPPA in the enabling statutes makes clear that, if the locality instead solicited bids in accordance with the VPPA, it may still, for any reason, contract with a public service authority or provide the services itself without triggering additional procedures.

The second reference to the VPPA in the enabling statutes requires that certain enumerated localities hold at least two public hearings in addition to complying with the applicable sections of the VPPA before committing to own, operate, or contract for the operation of a resource recovery waste disposal facility. Va. Code Ann. § 15.2-931 (2008).

In such a situation, had the General Assembly not clarified that the new procedural requirements, namely the two or more public hearings, are in addition to the procedural requirements of the VPPA, the new procedural requirements may have been understood to replace the procedural requirements of the VPPA. Furthermore, it is necessary to note that this particular enabling statute refers to applicable portions of the VPPA. This implies that portions of the VPPA are generally applicable to the enabling statutes. If the enabling statutes preempted the VPPA, then referring to applicable sections of the VPPA within the enabling statutes would be meaningless.

The third reference to the VPPA in the enabling statutes requires that localities follow certain procedural requirements before displacing a private company that provides trash collection services. Va. Code Ann. § 15.2-934 (2008). It then explains that a locality, following a competitive process conducted in accordance with the VPPA, does not displace a private company by awarding the contract to a public service authority or by deciding to provide the services itself. Va. Code Ann. § 15.2-934 (2008).

This language is identical to the language used in the first reference to the VPPA in the enabling statutes and thus the same rationale applies. Had the General Assembly not clarified what amounted to displacement of a private company and what did not, a competitive process conducted in accordance with the VPPA might have been understood to trigger the displacement status of the lowest bidder. As a result, a locality would have to follow all of the procedural requirements in the third reference to the VPPA in the enabling statutes before displacing the lowest bidder by awarding a contract to a public service authority or by providing the services itself.

The fourth reference to the VPPA in the enabling statutes allows counties to favor the lowest responsible bidder offering recycled paper or paper products in a competitive process conducted in accordance with the VPPA. Va. Code Ann. § 15.2-938 (2008). The statute permits this by giving counties the flexibility to contract with the lowest responsible bidder offering recycled paper or paper products if its bid is within 10 percent of the lowest bid. Va. Code Ann. § 15.2-938 (2008).

In such a situation, had the General Assembly not clarified that a county is allowed to contract with the lowest responsible bidder offering recycled paper or paper products instead of the lowest responsible bidder, the lowest responsible bidder could claim that it was displaced by another nongovernmental party. The lowest responsible bidder would then seek to remedy the situation under the appropriate provisions of the VPPA.

Thus, all of the references to the VPPA in the enabling statutes have a contextual function that is independent of any implied preemptory function. Some of the references provide for procedural requirements in addition to those required by the VPPA, while some of the references serve to clarify language that would otherwise be ambiguous. The County maintains that each reference to the VPPA serves to pinpoint a particular situation to which the VPPA applies. (Brief in Support of Demurrer to Amended Complaint at 11.) As a result of this interpretation, the County suggests that when read collectively, the enabling statutes exempt the County from abiding with the provisions of the VPPA. This interpretation fails to recognize that the language of the enabling statutes neither explicitly nor implicitly exempts the County from the requirements of the VPPA.

3. *The Public Policy Rationale Expressed in the Enabling Statutes Does Not Make the Virginia Public Procurement Act Inapplicable*

The County relies on one Virginia Supreme Court ruling to argue that public policy favors deference to local governing bodies on waste collection and disposal services, thus precluding the application of competitive

purchasing statutes. (Brief in Support of Demurrer to Amended Complaint at 12.) In *Concerned Residents of Gloucester County v. Board of Supervisors*, 248 Va. 488, 490, 449 S.E.2d 787 (1994), citizens of a county sued in order to invalidate a contract between the county and a private waste disposal business. The county had requested competitive bids to construct and operate a waste disposal facility, and, after the bidding, it contracted with one of the bidders. The suit rested on various constitutional and statutory grounds and was dismissed for failure to state a claim. *Id*. The Virginia Supreme Court affirmed the lower court's dismissal and held that the county was constitutionally and statutorily permitted to contract. *Id*. at 500. The Court began its analysis by quoting the public policy statement contained in § 15.2-931 of the enabling statutes. It specifically referred to the anti-competitive language in the statement when explaining that a county may enter into an exclusive contract if it is reasonable and not arbitrary. *Id*. at 492-99.

The *Gloucester* case is distinguished from the case at bar in three ways. First, the public policy statement contained in the enabling statutes was not quoted in order to emphasize its anti-competitive language, but rather to emphasize that it is a significant grant of police power authority from the state to local governments. Second, the county had conducted a competitive bidding process. Third, the case did not address the VPPA. Therefore, the Court's ruling does not support an inference that public policy favors deference to local governing bodies on waste collection and disposal services, thus precluding the application of competitive purchasing statutes. That issue was simply not raised in this case.

The County also points to the public policy statement contained in the enabling statutes to claim that the competitive purchasing requirements of the VPPA were not intended to generally apply to solid waste collection and disposal contracts. (Brief in Support of Demurrer to Amended Complaint.) The public policy statement contained in the enabling statutes states the policy of the Commonwealth in regards to waste management:

> It has been and is continuing to be the policy of the Commonwealth to authorize each locality to displace or limit competition in the area of garbage, trash, or refuse collection services and garbage, trash, or refusal disposal services to provide for the health and safety of its citizens, to control disease, to prevent blight and other environmental degradation, to promote the generation of energy and recovery of useful resources from garbage, trash, and refuse, to protect limited natural resources for the benefit of its citizens, to limit noxious

odors and unsightly garbage, trash, and refuse and decay and to promote the general health and welfare by providing for adequate garbage, trash, and refuse collection services and garbage, trash, and refuse disposal services. Accordingly, governing bodies are directed and authorized to exercise all powers regarding garbage, trash, and refuse collection and garbage, trash, and refuse disposal notwithstanding any anti-competitive effect.

Va. Code Ann. § 15.2-931 (2008).

The purpose of the VPPA is:

To the end that public bodies in the Commonwealth obtain high quality goods and services at reasonable cost, that all procurement procedures be conducted in a fair and impartial manner with avoidance of any impropriety or appearance of impropriety, that all qualified vendors have access to public business and that no offeror be arbitrarily or capriciously excluded, it is the intent of the General Assembly that competition be sought to the maximum feasible degree, that procurement procedures involve openness and administrative efficiency, that individual public bodies enjoy broad flexibility in fashioning details of such competition, that the rules governing contract awards be made clear in advance of the competition, that specifications reflect the procurement needs of the purchasing body rather than being drawn to favor a particular vendor, and that the purchaser and vendor freely exchange information concerning what is sought to be procured and what is offered.

Va. Code Ann. § 2.2-4300 (2008).

Both of these are compelling statements of public policy, yet they appear to be in tension with one another. On one hand, we have the health and general welfare of the public and on the other we have the principles of capitalism and the legitimacy of government. Nevertheless, the public policy statement contained in the enabling statutes, while seemingly at odds with the VPPA, never explicitly exempts the award of contracts for waste hauling services from the competitive procurement requirements of the VPPA.

In addition, the competitive procurement requirements of the VPPA do not threaten the general welfare of the people. In fact, the legislature has acted to create exceptions to the application of the VPPA in situations where there is conflict. For example, when a building burned down on the campus of James Madison University on November 16, 2003, the legislature allowed the rebuilding process to be exempt from the provisions of the VPPA. Va. Code Ann. § 2.2-4343 (2008) (historical and statutory notes). This was allowed so as to speed up the rebuilding process. *Id.* The VPPA also provides exceptions in the case of emergencies. "In case of emergency, a contract may be awarded without competitive sealed bidding or competitive negotiation; however, such procurement shall be made with such competition as is practicable under the circumstances." Va. Code Ann. § 2.2-4303 (2008). These exceptions resolve the underlying public policy concerns regarding the general welfare of the people as expressed in the public policy statement contained in the enabling statutes.

However, if the VPPA were inapplicable to contracts related to waste management, then its goals of providing the benefits of competition and of preserving the appearance of propriety might be undermined, The public policy statement contained in the enabling statutes directs and authorizes governing bodies to exercise all powers notwithstanding any anti-competitive effect. This authority, however, is not so broad as to prevent the application of a specific statutory framework which is otherwise applicable.

The plaintiff argues that this position is especially true considering what he argues is the legislative history behind the enactment of the public policy statement contained in the enabling statutes. He suggested that the legislature of Virginia added the public policy statement regarding general welfare in response to a United States Supreme Court ruling. In *Cmty. Commc'ns Co. v. City of Boulder*, the City of Boulder enacted an ordinance that limited a cable television operator's business. 455 U.S. 40, 44, 102 S. Ct. 835, 70 L. Ed. 2d 810 (1982). The cable television operator sued the city for violations of federal antitrust laws. *Id.* at 47. The city responded by arguing that its ordinance enjoyed state action exemption from the Sherman Act. *Id.* at 47. The Supreme Court found in favor of the cable television operator and ruled that anticompetitive restraints engaged in by state municipalities or subdivisions must be clearly articulated and affirmatively expressed as state policy in order to gain an antitrust exemption. *Id.* at 51-52.

Following this ruling, the Virginia legislature added the public policy statement regarding general welfare to the enabling statutes. Recognizing there is very little sound basis from which this Court may divine the legislative purpose for stating public policy, it would not be inconsistent that the General Assembly enacted the enabling statutes in response to the Supreme Court ruling.

### 4. *Botetourt County's Purchasing Policy Has Not Displaced the Virginia Public Procurement Act*

The County's Purchasing Policy does not displace the VPPA. The VPPA allows a county to adopt, by ordinance or resolution, alternative policies and procedures, with certain limitations. Va. Code Ann. § 2.2-4343 (2008). These alternative policies and procedures must be based on competitive principles and must be generally applicable to procurement of goods and services. *Id.* The County's Purchasing Policy, however, does not appear to be generally applicable to procurement of goods and services in this particular fact pattern. The Purchasing Policy does not apply to revenue neutral procurements, despite the fact that the VPPA mandates that it apply to all procurements of goods and services without regard to who provides the consideration. (County of Botetourt, Virginia, Purchasing Policy and Procedures Manual at 5.) Accordingly, the Purchasing Policy cannot be characterized as an alternative policy or procedure that replaces the VPPA.

### B. *Advanced Logistics Has Standing To Sue Under the Provisions of the Virginia Public Procurement Act*

Two Virginia Supreme Court cases have addressed the issue of standing to sue under the provisions of the VPPA. In *Concerned Taxpayers of Brunswick County v. County of Brunswick*, 249 Va. 320, 324-25, 455 S.E.2d 712 (1995), a group of local citizens sued a county under a variety of theories in relation to the county's landfill project. One of the theories was based on the VPPA. *Id.* at 329. The citizens argued that, because the county failed to comply with the requirements of the VPPA, its contracts, with regard to the landfill were void. *Id.* at 329. The Virginia Supreme Court ruled that "[t]hese sections permit only bidders, offerors, and contractors, within the meaning of the [VPPA], to invoke those remedies by protesting an award, initiating administrative procedures, or bringing an action to challenge a decision to award a contract." *Id.* at 330. The Court noted that the plaintiffs were concerned taxpayers and were not bidders, offerors, or contractors, within the meaning of the VPPA. *Id.* at 330. The plaintiffs thus lacked standing to sue under the VPPA's provisions. *Id.* at 330.

In *Sabre Constr. Corp. v. County of Fairfax*, 256 Va. 68, 69-71, 501 S.E.2d 144 (1998), an unsuccessful bidder protested a county's decision to award a contract to the next lowest bidder. Instead of waiting for the county to rule on the protest, however, the unsuccessful bidder brought suit in circuit

court. *Id.* at 70. The lower court dismissed the action with prejudice, and the unsuccessful bidder appealed. *Id.* at 70. The Virginia Supreme Court held that the unsuccessful bidder did not have standing to sue in circuit court, first, because it had filed an action in circuit court one day before the county denied its protest and, second, because it was not a disqualified bidder by the statutory language of the VPPA. *Id.* at 71. The Court reasoned that the VPPA created substantive rights with special limitations, rather than procedural rights, and the fact that the unsuccessful bidder failed to comply with the requirements of the VPPA justified the dismissal of the action with prejudice. *Id.* at 71.

1. *Advanced Logistics Is a Potential Bidder or Offeror within the Meaning of the Virginia Public Procurement Act*

Advanced Logistics filed a Protest and Petition for Reconsideration on March 7, 2008, in compliance with § 2.2-4360 of the VPPA. (Amended Complaint at 12.) Section 2.2-4360 of the VPPA may be divided into four parts. The first part of § 2.2-4360 of the VPPA requires that Advanced Logistics be a "potential bidder or offeror on a contract negotiated on a sole source . . . basis who desires to protest the award or decision to award such contract." Va. Code Ann. § 2.2-4360 (2008).

> Potential bidder or offeror means a person who, at the time a public body negotiates and awards or proposes to award a contract, is engaged in the sale or lease of goods, or the sale of services, insurance, or construction, of the type to be procured under the contract, and who, at such time, is eligible and qualified in all respects to perform that contract, and who would have been eligible and qualified to submit a bid or proposal had the contact been procured through competitive sealed bidding or competitive negotiation.

Va. Code Ann. § 2.2-4301 (2008).
In addition, only:

> [u]pon a determination in writing that there is only one source practicably available for that which is to be procured, a contract may be negotiated and awarded to that source without competitive sealed bidding or competitive negotiation. The writing shall document the basis for this determination. The

public body shall issue a written notice stating that only one source was determined to be practicably available, and identifying that which is being procured, the contractor selected, and the date on which the contract was or will be awarded. This notice shall be posted in a designated public area or published in a newspaper of general circulation on the day the public body awards or announces its decision to award the contract, whichever occurs first. Public notice may also be published on the Department of General Services' central electronic procurement website and other appropriate websites.

Va. Code Ann. § 2.2-4303 (2008).

According to the amended complaint, Advanced Logistics is a waste and recyclable materials hauler. (Amended Complaint at 2.) It has existed since 1995 and is currently in business. *Id.* at 7. It has twelve trucks, thirty trailers, and twelve employees in Botetourt County. *Id.* at 7. It also has significant financial resources and a skilled management team. *Id.* at 7-8. Last but not least, Advanced Logistics expressed interest in participating in a competitive bid for waste management services contracts in Botetourt County. *Id.* at 8. As such, Advanced Logistics is and was a potential bidder or offeror engaged in the sale of waste hauling services at all relevant times. Nothing in the language of the pleadings would disqualify Advanced Logistics from submitting a bid or proposal other than the fact that the County did not engage in a competitive sealed bidding process as by the requirements of the VPPA.

The County refused Advanced Logistics any opportunity or permission to participate in the procedure for the awards of the waste hauling services contracts by awarding the contracts to the incumbent Contractors without competition. *Id.* at 9. The County's award process was thus a sole source procurement. Yet the County did not follow the procedural requirements set by the VPPA for awarding contracts on a sole source basis. For example, the County did not issue a written notice stating that only one source was determined to be practicably available and did not post such notice in a designated public area or publish such notice in a newspaper of general circulation.

The second part of § 2.2-4360 of the VPPA requires that Advanced Logistics file a protest within ten days of the award of the waste hauling services contracts. Va. Code Ann. § 2.2-4360 (2008). The County awarded the waste hauling services contracts to the incumbent Contractors on February 26, 2008. (Amended Complaint at 1.) Advanced Logistics filed a Protest on March 7, 2008, in a timely manner. *Id.* at 12. The third part of § 2.2-4360 of

the VPPA requires that the County deny the Protest within ten days of receipt. (Va. Code Ann. § 2.2-4360 (2008.)) The County did deny the Protest but not until March 25, 2008, nearly three weeks after the filing of the Protest. (Amended Complaint at 12.)

The fourth part of § 2.2-4360 of the VPPA allows Advanced Logistics to appeal the denial of the Protest or pursue legal action. Va. Code Ann. § 2.2-4360 (2008). Advanced Logistics, after pursuing all of the administrative remedies available to it under the VPPA to no avail, brought legal action in the Circuit Court of Botetourt County pursuant to the provisions of the VPPA.

2. *Advanced Logistics Is a Prospective Bidder or Offeror within the Meaning of the Virginia Public Procurement Act*

Alternatively, Advanced Logistics is a prospective bidder or offeror and has standing to pursue legal action in compliance with § 2.2-4364 of the VPPA. This provision of the VPPA requires that Advanced Logistics be a "prospective bidder or offeror" who is refused permission or disqualified from participation in bidding or competitive negotiation. Va. Code Ann. § 2.2-4364 (2008).

The term "prospective" is not defined within the VPPA. The plain legal meaning of the word is "anticipated" or "expected." *Black's Law Dictionary* 576 (3rd pocket ed. 2006). Thus, for the same reasons that Advanced Logistics is a potential bidder or offeror, it is also a prospective bidder or offeror.

The County did not solicit bids but instead awarded waste hauling services contracts through a sole source procurement process. As a result, Advanced Logistics and all other willing and able local contractors in the waste hauling business were summarily disqualified. As such, Advanced Logistics has standing to bring legal action under § 2.2-4364 of the VPPA. Note that under this provision, a prospective bidder or offeror does not need to file a Protest before filing an action in circuit court.

3. *The Defendant Argues That the Waste Hauling Services Contracts Awarded to the Incumbent Contractors Are New or Modified Contracts That Do Not Require Competitive Bidding*

A contract is defined as "[a]n agreement between two or more parties creating obligations that are enforceable or otherwise recognizable at law." *Black's Law Dictionary* 143 (3rd pocket ed. 2006). The County amended existing contracts with the incumbent Contractors to extend the terms of such contracts. Under the VPPA, an existing contract's term may be extended for

only one reason, "to allow completion of any work undertaken but not completed during the original term of the contract." Va. Code Ann. § 2.2-4309 (2008). The County does not contend that it extended the terms of the existing waste hauling services contracts solely to allow completion of unfinished work.

In fact, the amended agreements did not merely extend the terms of the existing contracts. The amended agreements also added substantial and burdensome provisions and obligations to the existing contracts. (Amended Complaint at 10-11.) The incumbent Contractors agreed to these new provisions and obligations. Nothing in the original waste hauling services contracts contemplated this sort of significant modification of the agreement and the incumbent Contractors had the option to let the existing contracts run their term and expire.

Thus, the amended agreements were either modifications to existing contracts or new contracts with all of the requisite elements of a contact: consideration, offer, acceptance, and mutual agreement. However, whether the waste hauling services contracts were new contracts or modifications of old contracts does not influence the outcome of this case. Modified contracts are themselves agreements that create enforceable obligations. Therefore, the waste hauling services contracts were public contracts with nongovernmental contractors for the purchase of services that should have been awarded after competitive sealed bidding as provided by the VPPA.

## Conclusion

In conclusion, the VPPA applies to the waste hauling services contracts for five reasons: the VPPA regulates service contracts between nongovernmental parties and local governments; the VPPA, includes a list of exemptions that does not include waste removal services contracts; an analysis of the enabling statutes does not support the preemption of the VPPA; the public policy rationale expressed in the enabling statutes does not make the VPPA inapplicable; Botetourt County's Purchasing Policy has not displaced the VPPA.

Additionally, Advanced Logistics has standing to sue under the provisions of the VPPA for two reasons: Advanced Logistics is a potential bidder or offeror within the meaning of the VPPA; Advanced Logistics is a prospective bidder or offeror within the meaning of the VPPA.

Lastly, the waste hauling services contracts are public contracts with nongovernmental contractors for the purchase of services for two reasons: the waste hauling services contracts are modified contracts or the waste hauling services contracts are new contracts.

Defendant's demurrer is overruled.