# W.M. SCHLOSSER COMPANY, INC.

## v.

# BOARD OF SUPERVISORS OF FAIRFAX COUNTY

Record No. 921152

April 16, 1993

Present: All the Justices

*Roger C. Jones (Braude & Margulies,* on briefs), for appellant.
*Dennis R. Bates, Senior Assistant County Attorney (David P. Bobzien, County Attorney; Robert Lyndon Howell, Deputy County Attorney,* on brief), for appellee.

JUSTICE HASSELL delivered the opinion of the Court.

The sole and narrow issue we consider in this appeal is whether a designee of a county executive is a "disinterested person" qualified to decide contractual disputes involving the county within the intendment of Code § 11-71(A), which is part of the Virginia Public Procurement Act (the Act), Code §§ 11-35 through 11-80.

This case was decided in the trial court on a demurrer and, therefore, we shall recite the facts in accordance with the well-established principle that the demurrer admits the truth of all material facts properly pleaded, facts impliedly alleged, and facts that may be fairly and justly inferred from alleged facts. *Cox Cable Hampton Roads* v. *City of Norfolk,* 242 Va. 394, 397, 410 S.E.2d 652, 653 (1991). On demurrer, a court may also examine exhibits that are filed with the pleadings. *Id.*

W.M. Schlosser Company, Inc. executed a contract with the Board of Supervisors of Fairfax County to perform extensive renovations of the Old Fairfax County Courthouse at a cost of $5,485,000. The work was to be performed in two phases. During the first phase of the work, Schlosser's work was disrupted and suspended by the County. The suspension and disruptions were allegedly attributable to electrical, space, and structural design defects in the plans and specifications.

Schlosser alleges that the County was aware of these defects before the solicitation of bids and the award of the contract. Schlosser claims that the County did not disclose these defects and permitted Schlosser to submit a contract price based upon plans and specifications that the County knew were "defective, falsely misleading, incomplete, inadequate, and unsuitable for their intended purpose."

In accordance with the contract's requirements, Schlosser submitted a written claim to the County for $1,179,028 in additional costs and damages. Schlosser pursued its claim through the administrative appeal process established in the contract. The County's director of public works, John di Zerega, denied the claim. Schlosser appealed the denial of its claim to the acting county executive and a hearing was conducted before the acting county executive's designee, Frederick K. Kramer, director of the County's office of general services. Schlosser objected to the designation of a County employee to hear and decide its claim. Kramer proceeded despite this objection, conducted an administrative hearing, and issued a written decision denying Schlosser's claim.*

Schlosser filed its amended motion for judgment against the County and alleged, among other things, that Kramer was not a "disinterested person" as required by law. Schlosser requested judicial review of the hearing officer's decision and sought damages for breach of contract, fraud, and other relief. The trial court sustained the County's demurrer to Schlosser's amended motion for judgment and the County's special plea in bar. We awarded Schlosser an appeal.

Schlosser argues, among other things, that the judgment of the trial court should be set aside because the County violated Code

---

* As agreed by the parties, Kramer interpreted a disputed portion of the contract before receiving any evidence regarding damages. Kramer ruled that Article 12.5.6 of the contract prohibited any award for indirect costs or damages. As a result of this ruling, Schlosser did not present any evidence.

§ 11-71(A) by designating its employee to serve as the hearing officer to decide Schlosser's contract claim. The County argues that the Fairfax acting county executive or his designee is a disinterested person within the meaning of Code § 11-71, and that Schlosser has not shown that the county executive's designee was biased or committed improper conduct or acts.

Paragraph 7.4 of the contract that the County executed with Schlosser establishes a dispute resolution procedure that does not expressly require a hearing before a "disinterested person." As pertinent, it provides:

> All claims, disputes or other matters or questions between the Contractor and the Owner . . . arising out of or relating to the performance of the Work or any termination hereunder shall be decided by the Director of Public Works or his designated representative.

> The County Executive or a designee shall hear appeals of or protests to the Director of Public Works decision regarding claims, disputes or other matters or questions between the Contractor and the Owner . . . arising out of or relating to the performance of the Work. The County Executive or designee shall provide for a hearing, the opportunity to present pertinent information and shall issue a written decision containing findings of fact. The findings of fact shall be final and conclusive and shall not be set aside unless the same are fraudulent or arbitrary or capricious, or so grossly erroneous as to imply bad faith.

However, Code § 11-71(A) of the Act states:

> A public body may establish an administrative procedure for hearing protests of a decision to award or an award, appeals from refusals to allow withdrawal of bids, appeals from disqualifications and determinations of nonresponsibility, and appeals from decisions on disputes arising during the performance of a contract, or any of these. *Such administrative procedure shall provide for a hearing before a disinterested person or panel, the opportunity to present pertinent information and the issuance of a written decision containing findings of fact.* The findings of fact shall be final and conclusive and shall not

be set aside unless the same are fraudulent or arbitrary or capricious, or so grossly erroneous as to imply bad faith. No determination on an issue of law shall be final if appropriate legal action is instituted in a timely manner.

(Emphasis added).

■ The Act, which is controlling here, was enacted by the General Assembly in 1982. As stated in the Act, its purpose "is to enunciate the public policies pertaining to governmental procurement from nongovernmental sources." Code § 11-35(B). Additionally, the General Assembly articulated the goals it sought to achieve by enacting the Act:

> To the end that public bodies in the Commonwealth obtain high quality goods and services at reasonable cost, that all procurement procedures be conducted in a fair and impartial manner with avoidance of any impropriety or appearance of impropriety, that all qualified vendors have access to public business and that no offeror be arbitrarily or capriciously excluded, it is the intent of the General Assembly that competition be sought to the maximum feasible degree, that individual public bodies enjoy broad flexibility in fashioning details of such competition, that the rules governing contract awards be made clear in advance of the competition, that specifications reflect the procurement needs of the purchasing body rather than being drawn to favor a particular vendor, and that purchaser and vendor freely exchange information concerning what is sought to be procured and what is offered.

Code § 11-35(G).

The Act creates a statutory scheme that certain governmental entities must utilize when procuring certain goods and services from nongovernmental contractors. This statutory scheme affords certain benefits to citizens of this Commonwealth, nongovernmental contractors, and governmental entities.

The Act contains numerous statutory provisions designed to protect governmental entities. For example, Code § 11-46.1 allows a governmental entity to create a disbarment procedure, thereby prohibiting the use of contractors who have performed unsatisfactorily for a public body. Code § 11-57 requires, with certain exceptions, that all bids or proposals for construction contracts in excess

of $100,000 must be accompanied by a bid bond from a surety company. Code § 11-58 requires payment and performance bonds upon the award of any public construction contract exceeding $100,000 to a prime contractor.

The statutory scheme created by the Act also accords certain protections to nongovernmental contractors. For example, Code § 11-53 requires that unless bids are rejected, a responsive bid from the lowest responsible bidder shall be accepted as submitted, except if a bid from the lowest responsible bidder exceeds available funds, the public body may negotiate with the apparent low bidder to obtain a contract price within available funds. Code §§ 11-62.2 and 11-62.10 require governmental entities to make prompt and timely payments to nongovernmental contractors. Code § 11-47 requires, in the case of a tie bid, that a preference be given to goods, services, and construction produced in Virginia or provided by Virginia persons, firms, and corporations. Code § 11-50 requires that every public body awarding public contracts establish procedures whereby comments concerning specifications or other provisions in the invitations to bid and requests for proposal can be received and considered before the time established for the receipt of bids or proposals or award of a contract.

Finally, certain statutes that comprise the Act confer rights upon Virginia's citizens and protect the public interest. For example, Code § 11-52 provides that "all proceedings, records, contracts and other public records relating to procurement transactions shall be open to the inspection of any citizen . . . in accordance with the Virginia Freedom of Information Act." Code §§ 11-72 through 11-80 establish certain ethics in public contracting. Code § 11-75 prohibits public employees from soliciting or accepting gifts from certain bidders, offerors, or contractors. Code § 11-77 prohibits bidders, offerors, contractors, or subcontractors from making gifts to public employees. Code § 11-78 prohibits contractors or subcontractors from utilizing "kickbacks" to procure work.

Thus, it is clear that the Act is unique because in the area of public procurement, the statutory scheme balances many competing interests and confers certain rights and obligations upon citizens of the Commonwealth, nongovernmental contractors, and governmental entities. Because of this unique scheme, in the absence of explicit statutory authorization, certain rights cannot be waived by contract. If the Act were to be construed to permit a contractor or a governmental entity to waive certain rights, then these waivers might frustrate the goals that the General Assembly sought to

achieve by enacting the Act. Accordingly, we hold that even though Schlosser executed a contract that permitted the county executive or his designee to hear Schlosser's administrative appeal, this contract could not vitiate Schlosser's right to a hearing before a disinterested person as required by Code § 11-71(A).

■ We also hold that Kramer, the County's employee who served as the hearing officer, is not a disinterested person within the intendment of Code § 11-71(A). Kramer was designated to serve as the hearing officer by the acting county executive who, pursuant to Code § 15.1-596, serves at the pleasure of the Board of Supervisors, a party to the contract and the entity against whom the claim had been made. Additionally, Kramer, as director of general services, had some involvement in the initial scope of the courthouse renovation project, even though he was not involved on a "day-to-day" basis and had no prior knowledge of Schlosser's claim against the County.

■ We do observe that the pleadings, as well as the attached exhibits, which include the transcript of the hearing conducted before Kramer, do not reveal any act of impropriety or improper conduct on the part of Kramer. We hold, however, that in the narrow and limited confines of the Act, an employee of the governmental entity against whom a claim has been filed cannot be deemed a disinterested person within the intendment of Code § 11-71(A).

The County, relying upon *Hladys* v. *Commonwealth*, 235 Va. 145, 366 S.E.2d 98 (1988), argues that its employee was entitled to serve as the hearing officer. The County's reliance is misplaced.

■ In *Hladys*, a physician appealed from the decision of the State Department of Health terminating his contract as a "physician-provider" with the Virginia Medical Assistance Program, commonly referred to as Medicaid. The physician's contract was terminated following a decision adverse to him in an administrative hearing. No statutory or administrative requirements were imposed upon the qualifications of the hearing officer who presided during the administrative hearing.

The physician contended that his due process rights were violated because the hearing officer was an official of the agency that investigated and presented the case against him. The sole issue that we considered in *Hladys* was whether the physician received "the minimum requirements of constitutional due process which must attend administrative hearings." *Id.* at 147, 366 S.E.2d at 99. Applying the "minimum requirements of constitutional due process which must attend administrative hearings," we held that the physician's

rights of due process were not abridged because there was no show-
ing of bias or improper conduct on the part of the hearing officer.
Here, however, we are not dealing with the "minimum require-
ments of constitutional due process." *Id.* at 149, 366 S.E.2d at 100.
Rather, we are dealing with an express statutory requirement, Code
§ 11-71(A), which requires that the hearing officer be a "disinter-
ested person."

In view of our holdings, we need not consider Schlosser's
remaining assignments of error. We will remand this case to the
trial court with direction that the trial court enter an order requiring
that the county executive appoint a disinterested person who shall
conduct the required administrative hearing on Schlosser's contract
claim.

*Reversed and remanded.*

JUSTICE LACY, with whom CHIEF JUSTICE CARRICO joins,
dissenting.

The majority today goes beyond the concept of fairness embodied
by well-established standards of due process and engrafts a new *per
se* disqualification standard onto the Public Procurement Act based
solely on the use of the word "disinterested." I respectfully dissent.

It is beyond dispute that the Public Procurement Act was enacted
to provide an open and fair procedure for the acquisition of goods
and services by government. The Act includes in that procedure an
administrative appeal option and a subsequent appeal to the circuit
court. Internal or administrative appeals of this sort are not uncom-
mon and serve a valuable purpose. They provide the parties the
opportunity to resolve disputes without incurring the time and
expense of formal litigation.

Because substantive rights such as property rights in employment
or continued licensure are involved, these internal or administrative
appeals must meet standards of due process. These standards are:
(1) timely and adequate notice; (2) the right to present evidence and
confront adverse witnesses; (3) the right to assistance of retained
counsel; and (4) *an impartial decision maker. Goldberg* v. *Kelly,*
397 U.S. 254, 267-71 (1970). The United States Supreme Court has
repeatedly and clearly held that due process requirements are not
violated when an employee of the governmental agency involved is
the decision maker. *Id.*; *Withrow* v. *Larkin,* 421 U.S. 35, 56-57
(1975).

This Court has agreed:

> [A]n official of the agency involved might serve as decision-maker and would not be barred from serving even if he had some prior involvement in the case before him, provided he had not participated in making the determination under review.

*Hladys* v. *Commonwealth*, 235 Va. 145, 147, 366 S.E.2d 98, 99 (1988) (citations omitted). In another case, this Court reversed a trial court finding that due process was violated when a city employee was allowed to sit on a review panel in a case where the city was urging a certain result. We stated that ''[w]hen, as here, there is no showing of bias or improper conduct, neither the structure of the panel which heard the appellee's grievance nor the procedure it followed violated the appellee's due-process rights.'' *City of Roanoke* v. *Early*, Record No. 850948 (June 27, 1988). These decisions reject Schlosser's argument that the ''[d]esignation of a County Official to Hear and Decide the Administrative Appeal of [its] Claim Against the County Violates . . . Due Process.''

The majority today creates a new category of decision maker and imposes a standard of personal integrity not previously seen in administrative appeals. To accomplish this, the majority either ignores the due process requirement of an impartial decision maker or draws a distinction between a ''disinterested'' and an ''impartial'' decision maker. I see no basis for the former and no substantive difference in the two words to justify the latter. In fact, *Webster's* specifically equates ''impartiality'' with ''disinterestedness,'' while *Black's*, in the legal context, includes each term in its definition of the other. *Webster's Third New Int'l Dictionary* 650, 1131 (1981); *Black's Law Dictionary* 468, 752 (6th ed. 1990). Furthermore, I find no rationale in the majority opinion or in the Public Procurement Act that, based solely upon the word ''disinterested,'' supports the imposition of such a standard on decision makers in this administrative procedure, but in no others. The majority's decision carries with it the undeniable implication that government employees or officers who are legitimately and legally acting as decision makers in other administrative appeal procedures are not disinterested persons. I can neither accept nor reconcile such a dichotomy.

Imposing an across-the-board disqualification of public officers and employees because of their employment status and making them *per se* ''interested'' parties not only goes beyond due process

protections, but also is in direct conflict with the long-standing presumption that public officials act correctly. *Hladys*, 235 Va. at 148, 366 S.E.2d at 100; *State Bd. of Health* v. *Godfrey*, 223 Va. 423, 436, 290 S.E.2d 875, 882 (1982). This presumption can be overcome by a showing of bias or improper conduct, but is not overcome by a showing of employment status alone. *Id.*

Under the majority's new standard, whether the county executive's designee, Mr. Kramer, was in fact not biased or engaged in improper conduct is irrelevant. According to the majority, "an employee of the governmental entity against whom a claim has been filed cannot be deemed a disinterested person within the intendment of Code § 11-71A." In addition to the potential disruption the majority's holding causes to long-standing administrative appeal procedures utilized under the Act, the holding results in an anomaly: an ordinary state employee cannot sit on an administrative appeal where the claim is against the state, but a judge, who is also a state employee, can hear and decide an appeal from an administrative disposition of the claim.

I believe that the General Assembly, in mandating a "disinterested" person or panel, intended to impose the same standards of fairness as are embodied in due process protections and afforded in administrative appeals generally. Under those well-established standards, neither the structure nor the procedure is *per se* unconstitutional or illegal, and the public employee or officer is presumed to act properly. If, however, evidence of bias or improper conduct is shown, which, as the majority recognizes, has not been shown here, this presumption would be overcome, and the public employee or officer clearly would no longer be "disinterested."

Finally, I disagree with the majority's suggestion that, in effect, Schlosser was required to contract away its fairness or due process protections. The Act does not require that administrative appeals be utilized at all. Here, the County and Schlosser agreed to the procedure and agreed that the county executive or his designee would hear the appeal. That agreement did not waive Schlosser's due process rights, or its rights to a disinterested decision maker. Schlosser retained the right to show the bias or improper conduct of Kramer, making him an "interested party" ineligible to serve.