COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present: Judges Chaney, Raphael and Callins
Argued at Richmond, Virginia

KSS ONE, LLC

v.      Record No. 0294-22-2

OPINION BY
JUDGE STUART A. RAPHAEL
MARCH 7, 2023

HENRICO COUNTY, VIRGINIA,
  BOARD OF SUPERVISORS OF HENRICO COUNTY,
  R. JOSEPH EMERSON, JR., IN HIS CAPACITY AS THE
  DIRECTOR OF PLANNING OF HENRICO COUNTY,
  PLANNING COMMISSION OF HENRICO COUNTY,
  UVP HOLDINGS LLC, AND HIGHWOODS SERVICES, INC.

FROM THE CIRCUIT COURT OF HENRICO COUNTY
Wilford Taylor Jr., Judge Designate

S. Keith Barker (S. Keith Barker, P.C., on briefs), for appellant.

Ryan Murphy, Deputy County Attorney; Michael J. Rothermel
(Andrew Newby, County Attorney; Edward E. Bagnell, Jr.;
Courtney M. Paulk; Elizabeth C. Burneson; Office of the Henrico
County Attorney; Spotts Fain PC; Hirschler Fleischer, PC, on brief),
for appellees.

Appellant KSS One, LLC brought this lawsuit to block the construction of a child-daycare center in a Henrico County office park where KSS owns a condominium unit. KSS claims that Henrico County's approval of the plan of development for the daycare center violated KSS's procedural-due-process rights because the decision was made by the director of the Henrico County Planning Commission as the designee of the Board of Supervisors; KSS argues that it was unconstitutional for the planning director to both advocate adopting the plan of development and then approve it as the final decisionmaker. KSS also argues that the approval of the plan of development changed the zoning of the property, impairing KSS's vested rights. Finding neither claim meritorious, we affirm.

BACKGROUND

Because we are reviewing the trial court's order sustaining the defendants' demurrers, we take the facts alleged in the amended complaint in the light most favorable to the plaintiff. *Patterson v. City of Danville*, ___ Va. ___, ___ (July 7, 2022).  We do not, however, accept the pleader's conclusions of law, even if those conclusions are couched as factual assertions.  *Id.*

In 1999, the Board of Supervisors of Henrico County approved "Conditional Rezoning Case C-27C-99" for a tract of land that included the property at issue.  The rezoning imposed various conditions, including the submission and approval of a plan of development.  The conditional rezoning classified the property as O-3C Office District.  That zoning classification permitted the operation of a daycare center as long as it was approved through a plan of development.  *See* Henrico Cnty. Code § 24.50(g) (2014) (permitting "Child care centers" in O-2 Office District under plan of development referenced in § 24-106); *id.* § 24-50.11(a) (2014) (permitting in O-3 Office District any use permitted in O-2 Office District); *id.* § 24-106 (2014) (plan of development procedures).  The Board of Supervisors later revised and renumbered the zoning ordinance, effective September 1, 2021.  *See* Henrico Cnty. Zoning Ordinance (2022), https://henrico.us/pdfs/planning/code-update/Ch24_2022-12-13.pdf.[1]

In 2004, PAPEC Richmond II, LLC applied for a plan of development for a 6.28-acre office condominium within the area subject to the 1999 rezoning.  KSS alleges that the county's planning department reviewed the application and required certain changes.  The Planning

---

[1] KSS alleged that, in 2016, the Board of Supervisors created the Innsbrook Redevelopment Overlay District, a zoning district allowing mixed-use development across an area that included the office park at issue.  But nothing in that ordinance affected the operation of a child daycare facility in an O-3 Office District.  Rather, the ordinance speaks in broad terms about encouraging "flexibility" in development and the implementation of the "Innsbrook Area Study."  Henrico Cnty. Code § 24-92.4(a)-(e) (2016) (recodified at Henrico Cnty. Code § 24-3707(A)-(D) (2022)).  The specific terms in the ordinance cover building height and "vehicular and pedestrian circulation," neither of which is at issue here.  *See id.* § 24-92.4(c)-(d) (2016) (now Henrico Cnty. Code § 24-3707(C)-(E) (2022)).

Commission then approved the plan and recommended it to the Board of Supervisors, which also approved it. The approved plan of development provided for eight buildings, together with common areas that included parking, lighting, and open space. PAPEC's approved plan of development did not mention the operation of a daycare facility.

PAPEC formed the Dominion Place Condominium Unit Owners Association, Inc. (Condo Association) to represent the interests of the condominium owners in the building units and common elements. By June 2007, the shells for two of the eight buildings had been completed.

Also in 2007, "[i]n reliance on the O-3C zoning," KSS purchased one of the condominium units from PAPEC. The amended complaint alleges that the purchase entitled KSS to "a proportional undivided interest in all Common Elements in existence at that time, including the parking for the entire 6.28 acres of the Property and the open spaces, along with requirements for exterior appearance and exterior lighting of the eight buildings to be constructed in the Complex." KSS began paying fees to the Condo Association to maintain the common areas.

By 2020, six of the eight buildings had been constructed and a contract for constructing the seventh was underway, all in conformity with the 1999 conditional rezoning and the 2004 plan of development.

In March 2020, after the State Health Commissioner declared that the COVID-19 pandemic posed a public health threat, the Governor issued an executive order prohibiting "all public and private in person gatherings of 10 or more individuals." Exec. Order 53 at 2 (Va. Mar. 23, 2020). The county manager for Henrico County also declared—and the Board of Supervisors confirmed—that a local emergency existed "because of the COVID-19 pandemic." On April 15, referencing the continuing emergency, the Board of Supervisors adopted an

ordinance delegating to the planning director the authority to "approve plans of development during the Emergency."

By 2020, defendant Highwoods Services, Inc. had come to own the portion of the office park slated for the eighth building. Highwoods contracted with defendant UVP Holdings, LLC (UVP) to construct a daycare center on that site. Highwoods and UVP approached the Condo Association to request alterations to the 2004 development plan to accommodate the daycare center. The alterations included limiting open spaces, changing the lighting restriction, and altering the footprint and architectural appearance of the building. But the Condo Association opposed the changes.

Undeterred, Highwoods filed a request for a plan of development with the planning department in September 2020, listing UVP as the developer. The parties refer to that submission as the "Childcare Plan of Development."

At a public hearing on December 10, 2020, conducted by the planning department, the department's staff—including its director, R. Joseph Emerson Jr., and the plan reviewer, Michael Kennedy—recommended approving the Childcare Plan of Development. Before, during, and after the public hearing, the Condo Association and KSS objected to the plan. Nonetheless, the Childcare Plan of Development was approved on February 23, 2021.

In March 2021, KSS filed suit seeking declaratory and injunctive relief against six defendants: Henrico County, the Board of Supervisors, the Planning Commission, and Emerson (collectively, the "County Defendants"); Highwoods; and UVP. After the defendants all demurred, the trial court permitted KSS to file an amended complaint, to which the defendants again demurred.

Count I of the amended complaint asserted that KSS's procedural-due-process rights were denied because of alleged deficiencies in the public notice for the December 2020 hearing.

Count II claimed that KSS's constitutional right to a "fair and impartial decisionmaker" was also violated because Emerson served in dual roles—first acting in "an executive advocacy capacity before the Planning Commission" to urge approval of the Childcare Plan of Development, and then approving the plan himself as the designee of the Board of Supervisors. Finally, Count III alleged that the Childcare Plan of Development impaired KSS's vested rights under Code § 15.2-2307. KSS requested a declaratory judgment that the plan was void and an injunction to prohibit construction of the daycare center.

After briefing and argument, the trial court sustained the defendants' demurrers and dismissed the amended complaint with prejudice, for "the reasons stated by the Defendants in their written submissions and on the record at the hearing." KSS noted a timely appeal.

ANALYSIS

We review de novo the trial court's decision sustaining the defendants' demurrers. *Givago Growth, LLC v. iTech AG, LLC*, 300 Va. 260, 264 (2021). Although we are not bound by KSS's legal conclusions, we accept as true the facts alleged in the amended complaint as well as the inferences that may be "fairly drawn from those facts." *Id.*; *Patterson*, ___ Va. at ___. "We then determine whether those [facts] and any reasonable inferences . . . satisfy the legal threshold for proving a prima facie case . . . ." *Patterson*, ___ Va. at ___.

Asserting four assignments of error, KSS argues that the trial court erred in dismissing Counts II and III of the amended complaint.[2] We begin by describing the conceptual error that pervades KSS's legal arguments. We then explain why neither Count II nor Count III states a claim upon which relief can be granted.

---

[2] KSS has abandoned its challenge to the dismissal of Count I.

*A. KSS conflates zoning with approval of a plan of development.*

KSS has conflated the approval of a zoning ordinance, on the one hand, with the approval of a plan of development that must comply with the zoning ordinance, on the other. "Zoning is a legislative power vested in the Commonwealth and delegated by it, in turn, to various local governments for the enactment of local zoning ordinances." *Jennings v. Bd. of Supervisors of Northumberland Cnty.*, 281 Va. 511, 516 (2011) (quoting *Byrum v. Bd. of Supervisors of Orange Cnty.*, 217 Va. 37, 39 (1976)). "[O]nly the governing body of a locality may zone or rezone property and then only by ordinance." *Laird v. City of Danville*, 225 Va. 256, 262 (1983). The Code makes clear that the term "'[z]oning' or 'to zone' means the process of classifying land within a locality into areas and districts . . . by *legislative* action." Code § 15.2-2201 (emphasis added). "[L]egislative decisions in zoning matters are 'presumed valid and will not be altered by a court absent clear proof that the action is unreasonable, arbitrary, [or] bears no reasonable relation to the public health, safety, morals, or general welfare.'" *Rowland v. Town Council*, 298 Va. 703, 718 (2020) (second alteration in original) (quoting *EMAC, LLC v. County of Hanover*, 291 Va. 13, 21 (2016)).

Unlike zoning ordinances, the approval of a site plan, plan of development, or building permit does not require action by the governing body and is not a legislative act. The Code requires each locality to "create a local planning commission in order to promote the orderly development of the locality and its environs." Code § 15.2-2210. But the planning commission serves "primarily in an advisory capacity to the governing bodies." *Id.*[3] The Code expressly allows a plan of development to be approved by the "local planning commission *or other agent*." Code § 15.2-2259(A)(1)-(3) (emphasis added). Before Emerson's appointment as that agent

---

[3] The Henrico County Planning Commission consists of six members appointed by the Board of Supervisors. Henrico Cnty. Code § 2-19 (2020). One of the six members is a member of the Board of Supervisors; the other five are "citizen members." *Id.*

under the April 2020 COVID-19 ordinance, the Henrico County Code permitted a plan of development to be approved by "[t]he planning commission or the board of supervisors." Henrico Cnty. Code § 24-106(g) (2014). The county code has since been amended to make permanent the planning director's appointment to approve plans of development. *See* Henrico Cnty. Code § 24-2314(C) (2022).[4]

Moreover, the review and approval of a plan of development by a planning commission or other agent are considered "ministerial, rather than discretionary, acts, the performance of which may be enforced by mandamus." *Bd. of Supervisors of Fairfax Cnty. v. Horne*, 216 Va. 113, 119 (1975). The review's principal purpose is "to assure compliance with regulations contained in such zoning ordinance." Code § 15.2-2286(A)(8); *see also* Henrico Cnty. Code § 24-106(a)(1) (2014) (stating that the first purpose of a plan of development is "[t]o ensure compliance with the applicable requirements of this chapter"—entitled "Zoning"—"prior to the issuance of a building permit or beginning development").

To ensure timely action, the Code provides that "[t]he local planning commission or other agent *shall act* on any proposed plat, site plan or plan of development within 60 days after it has been officially submitted for approval by either approving or disapproving the plat in writing, and giving with the latter specific reasons therefor." Code § 15.2-2259(A)(3) (emphasis added).

---

[4] The amended complaint provided a slightly conflicting account of how the Childcare Plan of Development was approved. The pleading states that the plan was first approved by the "Planning Commission," and then by Emerson acting "in his executive capacity" for the Board of Supervisors under the authority of the April 2020 COVID-19 ordinance. Am. Compl. ¶ 66. But Emerson's decision letter, attached as Exhibit 6 to the amended complaint, did not state that the plan was approved by the Planning Commission; it said that Emerson approved the plan of development, "acting as agent for the Board of Supervisors" under the COVID-19 emergency ordinance. Am. Compl. Ex. 6. Approval by Emerson as the Board's "agent," rather than by the Planning Commission, would be consistent with the statutory framework and the Board's COVID-19 ordinance. In any event, the minor discrepancy between KSS's pleading and the decision letter does not affect our disposition of either the procedural-due-process claim (Count II) or the vested-rights claim (Count III).

- 7 -

If the plan is disapproved, the "planning commission or other agent" must "identify deficiencies in the plat or plan that caused the disapproval by reference to specific duly adopted ordinances, regulations, or policies and shall identify, to the greatest extent practicable, modifications or corrections that will permit approval of the plat or plan." *Id.* Upon resubmission of a corrected plan, "the planning commission or other agent" must act "within 45 days." *Id.* "The failure of a local planning commission or other agent to approve or disapprove a resubmitted plat or plan within the time periods required by this section shall cause the plat or plan to be deemed approved." *Id.*

In short, the review of a plan of development involves no legislative judgments. The review determines whether the plan complies with the applicable zoning ordinance and any other legal requirements imposed by the locality. The Code's structure reflects this distinction. While the statutes governing zoning are set forth in Article 7 (entitled "Zoning"), in Chapter 22 of Title 15.2, the rules governing the submission and review of a plan of development are set forth in Article 6, entitled "Land Subdivision and Development." The separation of Article 6 from Article 7 reflects the "significant distinction" between zoning, a legislative function, and site-plan and plan-of-development review, a ministerial function. *Horne*, 216 Va. at 119.

KSS elides the ministerial review and approval of a plan of development with the legislative authority of the governing body to enact zoning ordinances. For instance, the amended complaint alleged that Henrico County's approval of the Childcare Plan of Development "changed the zoning" of the 6.28-acre office-park parcel. Am. Compl. ¶ 85. Not so. The approval of a plan of development represents an administrative finding that the plan follows the applicable zoning. It does not "change" the zoning.

### B. KSS failed to state a procedural-due-process violation based on Emerson's alleged dual roles (Count II; Assignment of Error 4).

Count II of the amended complaint alleged that the County Defendants violated KSS's procedural-due-process rights under the federal and Virginia constitutions. KSS begins with the premise that Emerson's approval of the Childcare Plan of Development impaired KSS's property interests. KSS then claims that Emerson was not a "fair and impartial decisionmaker" because he served in dual roles: first in "an executive advocacy capacity before the Planning Commission," and then in a "decision making role to grant final approval [on behalf] of the Board of Supervisors." Am. Compl. ¶ 80. "Whether a person has been deprived of due process is a question of law we review de novo." *Bragg Hill Corp. v. City of Fredericksburg*, 297 Va. 566, 585 (2019).

The Fourteenth Amendment to the Constitution of the United States provides that no State "shall . . . deprive any person of life, liberty, or property, without due process of law." The Virginia Constitution similarly provides that "no person shall be deprived of his life, liberty, or property without due process of law." Va. Const. art. I, § 11, cl. 1. The legal analysis under both provisions "involves a two-step inquiry when the government is alleged to have taken property: (1) 'whether the interest *is a property interest* protected by procedural due process guarantees,' and (2) 'whether the procedures prescribed or applied are sufficient to satisfy the due process "fairness" standard.'" *Bragg Hill*, 297 Va. at 585 (quoting *Klimko v. Va. Emp. Comm'n*, 216 Va. 750, 754 (1976)).

The defendants are correct that KSS had no property interest in the individual condominium unit where the daycare center is slated for development; KSS did not own that unit. Under the Virginia Condominium Act, a condominium "unit" is "a portion of the condominium designed and intended for *individual ownership* and use." Code § 55.1-1900 (emphasis added). KSS had no property interest in the individual unit owned by Highwoods.

- 9 -

And a zoning ordinance, let alone a development plan approved under a zoning ordinance, cannot endow a property owner with an entitlement to ensure the continuation of restrictions imposed on a neighbor's use of its own property. *See Town of Leesburg v. Long Lane Assocs. Ltd. P'ship*, 284 Va. 127, 136 (2012) ("The Code and this Court's case law do not support the conclusion that a landowner may have vested rights in the zoning classification or land uses of his or her neighbor, even where the property was subdivided from a parcel which was rezoned subject to proffered conditions.").

To satisfy the first prong of the analysis, however, KSS claims that the Childcare Plan of Development impaired its "property interest in the *common elements*" of the condominium complex, including the complex's "open spaces." (Emphasis added.) The phrase *common elements* "means all portions of the condominium other than the units." Code § 55.1-1900. And ownership of a *condominium unit* connotes "a unit *together with the undivided interest in the common elements appertaining to that unit*." *Id.* (emphasis added).

The defendants fail to address KSS's alleged property interest in those common elements. So we assume without deciding that KSS has a valid property interest in the common elements that is entitled to due-process protection.[5]

Even so, we conclude that KSS's procedural-due-process claim fails at the second step: the county provided all the process that was due.[6] That is, it was not a denial of due process for

---

[5] The defendants did not argue in the trial court that, under *Kuznicki v. Mason*, 273 Va. 166 (2007), "only a condominium unit owners' association has standing to sue for claims related to common elements and limited common elements." *Id.* at 169. We thus do not reach whether *Kuznicki* applies in the context of a unit owner's procedural-due-process claim based on an alleged property interest only in the common areas. *See* Code § 8.01-273(A) ("No grounds other than those stated specifically in the demurrer shall be considered by the court."); *Theologis v. Weiler*, ___ Va. App. ___, ___ (Feb. 14, 2023) ("[W]e may affirm an order sustaining a demurrer only on a ground that the defendant raised in the trial court.").

[6] We disagree with KSS that the County Defendants failed to make this argument in their demurrers. The County Defendants' demurrers to the amended complaint stated, "Even

- 10 -

the Board of Supervisors to empower Emerson as planning director to approve the Childcare Plan of Development. To be sure, having "an impartial decision-maker" is one of the "minimum requirements of constitutional due process" for "administrative hearings." *Hladys v. Commonwealth*, 235 Va. 145, 147 (1988) (citing *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970)). But courts "apply a presumption that public officials have acted correctly." *Id.* at 148. "Without a showing to the contrary, state administrators 'are assumed to be [persons] of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.'" *Id.* (quoting *Withrow v. Larkin*, 421 U.S. 35, 55 (1975)).

The amended complaint failed to allege facts that, even fairly construed in KSS's favor, show that Emerson was biased, facts that would make it reasonable to infer that Emerson was biased, or facts showing an unconstitutional risk of bias. KSS, for instance, did not allege facts showing actual bias. KSS argues that the plan-of-development approval process was structurally flawed because "Emerson played dual roles by promoting the 2020 POD and then approving the 2020 POD." But alleged structural flaws stemming from the decisionmaker's "institutional connection with the investigating agency" cannot overcome the "presumption that public officials have acted correctly," absent "a showing of bias or improper conduct." *Hladys*, 235 Va. at 148.

---

assuming KSS One was deprived of a vested property right, the County Defendants *provided constitutionally sufficient process* to KSS One during consideration of the Childcare Plan of Development." (Emphasis added.) Although stated at a higher level of generality, that is the same ground on which we affirm the trial court's ruling here. Moreover, this is not a different argument from the one actually litigated below. The defendants' joint brief in connection with the demurrers incorporated the County Defendants' earlier brief in support of the demurrer to the original complaint. That brief quoted *Withrow v. Larkin*, 421 U.S. 35 (1975), in support of this argument, explaining that "the mere combination of functions in an administrative proceeding 'does not, without more, constitute a due process violation.'" (Quoting *Withrow*, 421 U.S. at 58.) We thus find that the County Defendants adequately raised this argument below.

*Hladys* rejected the argument that such an institutional connection necessarily violates due process. The plaintiff there was a physician who filed an administrative challenge to the revocation of his contract to treat Medicaid patients. He claimed that his procedural-due-process rights were violated because the hearing officer "was an official of the agency which investigated and presented the case against him, and . . . was also a colleague of the chief witness against him." *Id.* at 147. The Court held that such institutional connections could not overcome the presumption that public officials acted impartially. *Id.* at 149.

That presumption cannot be overcome here either. Emerson's evaluation of the Childcare Plan of Development as planning director did not disqualify him from approving the plan as the delegated agent of the Board of Supervisors. "In fact, '[t]he Supreme Court has never held a system of combined functions to be a violation of due process, and it has upheld several such systems.'" *Ethicon Endo-Surgery, Inc. v. Covidien LP*, 812 F.3d 1023, 1029 (Fed. Cir. 2016) (alteration in original) (quoting 2 Richard J. Pierce, Jr., *Administrative Law Treatise* § 9.9 (5th ed. 2010))). *See also Withrow*, 421 U.S. at 52 ("[O]ur cases . . . offer no support for the bald proposition . . . that agency members who participate in an investigation are disqualified from adjudicating.").[7]

We also reject KSS's claim that Emerson's lack of impartiality was shown circumstantially. KSS alleges that Emerson "refused to follow the county ordinances by having

---

[7] The General Assembly, of course, may impose more demanding qualifications for governmental decisionmakers than the minimum constitutionally required. *See W.M. Schlosser Co. v. Bd. of Supervisors of Fairfax Cnty.*, 245 Va. 451, 457-58 (1993). The Virginia Public Procurement Act, for example, permits a locality to create an administrative appeal procedure involving a hearing "before a disinterested person" whose "findings of fact shall be final and conclusive." *Id.* at 454 (quoting Code § 11-71(A) (now Code § 2.2-4365)). The Court in *Schlosser* held that a hearing officer employed by the county and subject to its control was not "disinterested" under the Procurement Act, even if his serving in that role would not violate the "minimum requirements of constitutional due process" under *Hladys*. *Id.* at 458 (quoting *Hladys*, 235 Va. at 149).

his department schedule and present the 2020 POD at a public hearing to the Planning Commission before the 2020 POD application was complete" and that Emerson failed to schedule a second hearing to hear from KSS (again) before approving the plan. But the specifics alleged do not support a reasonable inference of bias. KSS claims that the planning department scheduled the public hearing even though the application misstated the total acreage involved and (in KSS's view) should have listed the 2004 plan as a prior plan of development. KSS fails to explain how either defect supports a reasonable inference that Emerson was biased or constitutionally disqualified from executing his "ministerial" duty, *Horne*, 216 Va. at 119, to determine whether the Childcare Plan of Development complied with the county zoning ordinance. KSS's allegations thus do not overcome the presumption under *Hladys* that Emerson was unbiased.

### C.  KSS failed to state a claim for the deprivation of a vested right (Count III, Assignments of Error 1, 2).

Count III of the amended complaint alleged that "adoption of [the Childcare Plan of Development] changed the zoning of the Property and impaired the plaintiff's vested rights under . . . Code § 15.2-2307." A court on demurrer is not bound by such conclusions of law, even when, as here, those conclusions are "camouflaged as factual allegations or inferences." *Patterson*, ___ Va. at ___ (quoting *Doe ex rel. Doe v. Baker*, 299 Va. 628, 641 (2021)).

We agree with the defendants that the trial court properly sustained their demurrers to this claim. The statute invoked by KSS provides that "[n]othing in this article"—that is, Article 7, *Zoning*—"shall be construed to authorize the impairment of any vested right." Code § 15.2-2307(A). Once a landowner's rights become "vested in a land use," then "such vesting shall not be affected by a subsequent *amendment to a zoning ordinance*." *Id.* (emphasis added).

Assuming for argument's sake that KSS had vested rights under the 1999 conditional rezoning, no "subsequent amendment to a zoning ordinance" affected those rights. *Id.*  The

applicable zoning has permitted the operation of a children's daycare center at least since the 1999 conditional rezoning. The "principal uses permitted" in this O-3 Office District have included "[a]ny principal use permitted and as regulated in an O-2 office district," Henrico Cnty. Code § 24-50.11(a) (2014), which in turn allowed "Child care centers" authorized through an approved plan of development, *id.* §§ 24-50.6(g), 24-106 (2014). Although the zoning ordinance has since been revised and recodified, it continues to permit the development of "Childcare" facilities in land zoned "O-3 Office District." *See* Henrico Cnty. Code § 24-3406(A) (2022).

While the 2004 plan of development did not feature a daycare facility, the county was not foreclosed from considering a new plan of development that included one. KSS argues that the 2004 plan of development "completed and finalized" the zoning. We are not bound by that legal conclusion. As explained above, a plan of development is not an "amendment to a zoning ordinance." Code § 15.2-2307(A). Rather, a zoning ordinance may require "the submission and approval of a plan of development . . . *to assure compliance with regulations contained in such zoning ordinance*." Code § 15.2-2286(A)(8) (emphasis added). The premise of Count III is thus wrong—the zoning of the property was not changed by either the 2004 plan of development or the 2020 Childcare Plan of Development.

In other words, Count III failed to state a viable cause of action because approval of the Childcare Plan of Development was not a "subsequent amendment to a zoning ordinance." Code § 15.2-2307(A). That plan of development may have differed from the 2004 plan. But the O-3 Office District zoning permitted a childcare facility once it was approved under a plan of development. The Childcare Plan of Development that Emerson found to be consistent with the

zoning ordinance simply provided that authorization.  Thus, its approval did not violate Code § 15.2-2307 by depriving KSS of any vested right in the existing zoning.[8]

CONCLUSION

KSS failed to plead facts showing that the county's process was constitutionally deficient or that a subsequent amendment to the zoning ordinance impaired its vested rights.  Accordingly, the trial court correctly sustained the defendants' demurrers.

*Affirmed.*

---

[8] Our affirmance of the trial court's ruling on the grounds set forth above makes it unnecessary to reach KSS's third assignment of error, which argued that a declaratory judgment was the appropriate vehicle to bring the claims set forth in Counts II and III.